

# NUMBER 13-08-00708-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## IN THE GUARDIANSHIP OF RAQUEL CANTU DE VILLARREAL, AN INCAPACITATED PERSON

---

## On appeal from the County Court at Law No. 2 of Cameron County, Texas.

---

# OPINION

## Before Justices Yañez, Rodriguez, and Garza
## Opinion by Justice Rodriguez

Appellants, Ignacio Villarreal Cantu, Fernando Villarreal Cantu, Martha Guadalupe Villarreal Cantu, and Consuelo Villarreal Cantu, seek to reverse an order confirming an arbitration award in favor of appellees, Raquel Villarreal Cantu, individually and in her capacity as guardian of the person of Doña Raquel Cantu de Villarreal, Marcelo Villarreal Cantu, and Carlos Villarreal Cantu. By three issues, appellants contend that the award should be vacated because the arbitrator exceeded

his powers in several respects and refused to postpone the arbitration hearing. We affirm.

## I. BACKGROUND

Doña Raquel Cantu de Villarreal ("Doña Raquel"), an elderly widow, is the mother of seven adult children, including appellants and appellees. Disputes between the children regarding Doña Raquel's care and custody and the disposition of her sizeable estate have given rise to a series of highly contentious legal proceedings, including four appeals and two original proceedings.[1] We will not address the factual and procedural underpinnings of these disputes except as necessary to address the legal issues pertinent to this appeal. *See* TEX. R. APP. P. 47.1, 47.4.

Following a court-ordered mediation to resolve some of the familial disputes, Doña Raquel's children entered into an "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement." This agreement was entered into and signed by all seven of the children. The agreement provides that it was made:

> [F]or the purpose of settling the various claims, controversies, and disputes, in Mexico and the United States, civil and criminal, among these

---

[1] *San Pedro Impulsora de Inmuebles Especiales, S.A., de C.V. v. Villarreal*, No. 13-09-00226-CV, 2010 Tex. App. LEXIS ___ (Tex. App.–Corpus Christi Nov. 18, 2010, no pet. h.) (affirming the denial of a corporation's special appearance); *In re De Villarreal*, No. 13-08-00408-CV, 2009 Tex. App. LEXIS 2249, at *11-12 (Tex. App.–Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.) (affirming in part and dismissing in part the appeal of Ignacio, Consuelo, Fernando, and Martha regarding two post-judgment orders enforcing a judgment and issuing writs of attachment); *In re Cantu*, No. 13-08-00682-CV, 2009 Tex. App. LEXIS 2241, at *1-2 (Tex. App.–Corpus Christi Apr. 2, 2009, orig. proceeding [mand. denied]) (mem. op.) (denying petition for writ of mandamus filed by Consuelo contending that the trial court failed to satisfy "the mandatory and jurisdictional notice requirements of the Texas Probate Code" because it held an initial guardianship hearing and appointed a temporary guardian "without giving the proposed ward prior notice as required by section 875 of the Texas Probate Code"); *In re de Villarreal*, No. 13-08-00707-CV, 2009 Tex. App. LEXIS 2233, at *1 (Tex. App.–Corpus Christi Apr. 2, 2009, no pet.) (per curiam) (mem. op.) (dismissing Ignacio's appeal of an order removing him as guardian of the person of Doña Raquel); *In re Cantu*, No. 13-08-00437-CV, 2008 Tex. App. LEXIS 5795, at *1-2 (Tex. App.–Corpus Christi July 30, 2008, orig. proceeding [mand. denied]) (mem. op.) (denying petition for writ of mandamus filed by Ignacio, Fernando, Consuelo, and Martha seeking to compel the trial court to vacate various orders pertaining to the guardianship of Doña Raquel).

parties arising out of the facts and circumstances relating directly or indirectly to the transfer and/or gifting of property of [Doña Raquel] and/or Ignacio Villarreal, the care and support of [Doña Raquel], and all other claims, controversies, and disputes, civil and criminal, between the parties arising prior to the date of this Agreement.

The agreement defines the scope of Doña Raquel's estate and puts various properties into "hotchpotch"[2] for distribution to the seven children, and further includes provisions pertinent to the guardianship, care, and welfare of Doña Raquel. The agreement contains an arbitration provision and provides that Reynaldo Garza, Jr., the mediator for the mediation resulting in the agreement, "shall be the arbitrator of any dispute regarding the interpretation and implementation of this Agreement." The agreement expressly states that Garza's "determination of any dispute regarding this Agreement and its implementation . . . shall be final with no party having the right to appeal," and the "implementation of this [A]greement includes the manner in which the [h]otchpotch is to be distributed to the seven children . . . ."

The trial court approved the settlement agreement and incorporated it into the final judgment in the case by a first amended order signed on February 14, 2008. Soon after the agreement was signed, however, the children began arguing about the agreement's implementation. Alleging that appellants breached the agreement and failed to abide by the judgment, Raquel moved for an accounting, contempt, a temporary restraining order, and temporary and permanent injunctions. The gravamen of Raquel's complaint was that appellants withdrew 34 million pesos, which was

---

[2] "Hotchpotch" may be generally defined as "the blending of properties to secure equality of division." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 408 (2d ed. 1995); *see also In the Guardianship of De Villarreal*, No. 13-08-00408-CV, 2009 Tex. App. LEXIS 2249, at*4-5 n.3 (Tex. App.–Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.).

referenced in and allocated by the settlement agreement, from the possession of a Mexican court, but failed to deposit the monies into a Mexican trust as required by the agreement and judgment.

On June 11, 2008, the trial court entered an order granting Raquel's motion and: ordering appellants to deposit the money into an account created for the benefit of the trust referenced in the agreement and to provide a detailed accounting regarding the money; enjoining appellants from selling, encumbering, or otherwise transferring any of the real estate properties described in the agreement in any manner inconsistent with the agreement; setting a final hearing for June 27, 2008; and ordering appellants to appear at that time "to show their compliance with this Court's Order herein to show why this Court's Order should be vacated." On June 27, Ignacio, Fernando, Consuelo and Martha failed to appear, and accordingly, the trial court entered an order for issuance of writs of attachment against them.

On June 9, 2008, the trial court entered an order clarifying some of its previous orders and compelling arbitration. The matter was arbitrated on August 18, 2008. Appellants did not submit proposals, comments, or responses to the arbitrator regarding the issues subject to arbitration and did not personally appear at the arbitration, although they were represented by counsel at the hearing. On September 25, 2008, the arbitrator issued an eighteen page arbitration award, including extensive factual and legal conclusions, which generally collected and divided the estate of Doña Raquel and provided for her care. After appellees moved to confirm the award and

4

appellants moved to vacate it, the trial court entered an order confirming the award. This appeal ensued.

## II. STANDARD AND SCOPE OF REVIEW

Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and the appellate court reviews the entire record. *Chestnut Energy Partners v. Tapia (In re Chestnut Energy Partners, Inc.)*, 300 S.W.3d 386, 397 (Tex. App.–Dallas 2009, pet. denied); *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567 (Tex. App.–Dallas 2008, no pet.); *see Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex. App.–Fort Worth 2003, pet. denied).

## III. VACATUR OF ARBITRATION AWARD

Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow. *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *see CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Statewide Remodeling, Inc.*, 244 S.W.3d at 568; *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.–San Antonio 2003, pet. denied); *IPCO-G.&C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 256 (Tex. App.–Houston [1st Dist.] 2001, pet. denied). "Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes." *CVN Group, Inc.*, 95 S.W.3d at 238. *But see Morrison v. Circuit City Stores*, 317 F.3d 669, 669-70 (6th Cir. 2003) (noting that arbitration can often be much more expensive for consumers than a

5

comparable case in litigation); *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1177, 1178-84 (Ohio App. Div. 2004) (discussing prohibitive costs of arbitration compared to litigation for many consumers); *see also* Richard M. Alderman, *Why We Really Need the Arbitration Fairness Act, It's All About Separation of Powers*, 12 J. CONSUMER & COM. L. 151, 154 n. 55 (2009) ("Although most small claims courts provide a judge and jury for less than $100, the costs of arbitration far exceed this amount. A recent study by Public Citizen concludes that the costs of arbitration almost always exceed the costs of litigation."); Theodore Eisenberg, Geoffrey P. Miller & Emily Sherwin, *Arbitration's Summer Soldiers: An Empirical Study of Arbitration Clauses in Consumer and Nonconsumer Contracts*, 41 U. MICH. J.L. REFORM 871, 895 (2008) (stating that "corporations' selective use of arbitration clauses against consumers, but not against each other, suggests that their use of mandatory arbitration clauses may be based more on strategic advantage" in defending against consumer claims); Mark Budnitz, *The High Cost of Mandatory Consumer Arbitration*, 67 LAW & CONTEMP. PROBS. 133, 133 (2004) (concluding that the cost of mandatory arbitration is often prohibitively high).

The Texas Supreme Court has "long held that 'an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it.'" *CVN Group, Inc.*, 95 S.W.3d at 238 (quoting *City of San Antonio v. McKenzie Constr. Co.*, 136 Tex. 315, 150 S.W.2d 989, 996 (Tex. 1941) ("The courts will not overthrow an award such as this, except in a very clear case.")). Review of an arbitration award is so limited that an award may not be vacated even if there is a

mistake of fact or law. *Univ. Comp. Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.–Houston [1st Dist.] 2005, pet. denied); *Stieren v. McBroom*, 103 S.W.3d 602, 605 (Tex. App.–San Antonio 2003, pet. denied); *Vernon E. Faulconer, Inc. v. HFI, Ltd. P'ship*, 970 S.W.2d 36, 39 (Tex. App.–Tyler 1998, no pet.). The arbitrator's award is "conclusive on the parties as to all matters of fact and law." *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 328 (Tex. App.–Fort Worth 2006, no pet.). Where there is no allegation of a statutory or common law ground to vacate or modify the arbitration award, we lack jurisdiction to review the arbitrator's decision. *Fogal v. Stature Constr., Inc.*, 294 S.W.3d 708, 721 (Tex. App.–Houston [1st Dist.] 2009, pet. denied); *Providian Bancorp Servs. v. Thomas*, 255 S.W.3d 411, 415 (Tex. App.–El Paso 2008, no pet.); *Pettus v. Pettus*, 237 S.W.3d 405, 418 (Tex. App.–Fort Worth 2007, pet. denied).

The Texas Civil Practice and Remedies Code dictates that, unless grounds are offered for vacating, modifying, or correcting an award under other specified sections of the code, the court, on application of a party, shall confirm the award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (Vernon 2005). Thus, "confirmation is the default result unless a challenge to the award has been or is being considered." *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). The grounds for vacating an award under the code are set out in section 171.088(a), which states:

On application of a party, the court shall vacate an award if:

(1)    the award was obtained by corruption, fraud, or other undue means;

(2)    the rights of a party were prejudiced by:

7

> (A) evident partiality by an arbitrator appointed as a neutral arbitrator;
>
> (B) corruption in an arbitrator; or
>
> (C) misconduct or wilful misbehavior of an arbitrator;
>
> (3) the arbitrators:
>
> > (A) exceeded their powers;
> >
> > (B) refused to postpone the hearing after a showing of sufficient cause for the postponement;
> >
> > (C) refused to hear evidence material to the controversy; or
> >
> > (D) conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or
>
> (4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B, and the party did not participate in the arbitration hearing without raising the objection.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a) (Vernon 2005). "These grounds reflect severe departures from an otherwise proper arbitration process and are of a completely different character than ordinary legal error." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.–Dallas 2010, no pet.) (quoting *Quinn v. Nafta Traders, Inc.*, 257 S.W.3d 795, 798 (Tex. App.–Dallas 2008, pet. granted)). The grounds for modifying or correcting an award are set out in section 171.091 (a), which states:

> On application, the court shall modify or correct an award if:
>
> (1) the award contains:
>
> > (A) an evident miscalculation of numbers; or

8

> (B)    an evident mistake in the description of a person, thing, or property referred to in the award;
>
> (2)    the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or
>
> (3)    the form of the award is imperfect in a manner not affecting the merits of the controversy.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a) (Vernon 2005).

## IV. THE ARBITRATOR'S AUTHORITY OVER VOID ORDERS AND AWARD OBTAINED BY UNDUE MEANS

In their first issue, appellants claim that the arbitration award is the product of a series of trial court orders that are void because the trial court failed to comply with the notice and hearing requirements in section 875(e) of the Texas Probate Code. *See* TEX. PROB. CODE ANN. § 875(e) (Vernon Supp. 2009). According to appellants, the arbitration award should be vacated because the arbitrator exceeded his powers and the award was obtained by undue means. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(1), (a)(3)(a). In two sub-issues, appellants contend that: (1) the award should be vacated because the arbitrator had no authority to decide issues submitted by a void court order arising out of a settlement agreement that is the product of other void court orders; and (2) the award should be vacated because it was obtained by undue means. Appellants' argument that the arbitration award was obtained by "undue means'" is merely an argument that it was obtained as a result of "the coercive power of a court lacking jurisdiction."

9

Appellees contend, in contrast, that: (1) the trial court and this Court have already determined and rejected appellants' jurisdictional arguments; (2) further review of this matter is blocked by law of the case and/or judicial estoppel; and (3) the parties' settlement agreement requires that certain issues be arbitrated without appeal.

In cause number 13-08-00682-CV, appellant herein, Consuelo Villarreal Cantu, argued that the trial court failed to satisfy "the mandatory and jurisdictional notice requirements of the Texas Probate Code" because it held an initial guardianship hearing and appointed a temporary guardian "without giving the proposed ward prior notice as required by section 875 of the Texas Probate Code." *In re Cantu*, No. 13-08-00682-CV, 2009 Tex. App. LEXIS 2241, at *1-2 (Tex. App.–Corpus Christi Apr. 2, 2009, orig. proceeding [mand. denied])[3] (mem. op.); *see generally* TEX. PROB. CODE ANN. § 875. Consuelo thus contended that the trial court's jurisdiction over Doña Raquel was never properly invoked, and consequently, all orders in the guardianship proceeding were void. *See In re Cantu*, 2009 Tex. App. LEXIS 2241, at *1-2. The Court requested and received a response to Consuelo's petition for writ of mandamus from the real parties in interest, and further received a reply thereto from the relator. *Id.* After due consideration, we concluded that the trial court had acquired jurisdiction over Doña Raquel at the time it signed the order appointing Raquel as her temporary guardian, and therefore the order appointing Raquel as temporary guardian, and subsequent orders in that matter, were not void. *See id.* at *8-10.

---

[3] Currently pending before the Court is appellees' "Motion to Take Judicial Notice," by which appellees request that this Court take judicial notice of the briefs that were filed in the Texas Supreme Court in cause number 09-0441. The Court received and reviewed the response to this motion that was filed by appellants. Given the current posture of this case, we dismiss appellees' motion as moot.

A judgment or order is void when it is apparent that the court rendering it lacked jurisdiction of either the parties or the subject matter of the lawsuit. *See In re Mask*, 198 S.W.3d 231, 235 (Tex. App.–San Antonio 2006, orig. proceeding); *In re Bokeloh*, 21 S.W.3d 784, 794 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding). For a trial court to have jurisdiction over a party, the party must be properly before the court in the pending controversy as authorized by procedural statutes and rules. *Perry v. Ponder*, 604 S.W.2d 306, 322 (Tex. Civ. App.–Dallas 1980, no writ). Generally, a trial court does not have jurisdiction to enter a judgment or order against a respondent unless the record shows proper service of citation on the respondent, or an appearance by the respondent, or a written memorandum of waiver at the time the judgment or order was entered. TEX. R. CIV. P. 124; *Werner v. Colwell*, 909 S.W.2d 866, 869-70 (Tex. 1995); *Autozone, Inc. v. Duenes*, 108 S.W.3d 917, 920 (Tex. App.–Corpus Christi 2003, no pet.). If a trial court enters a judgment before it acquires jurisdiction of the parties, the judgment is void. *In re Mask*, 198 S.W.3d at 235; *In re B.A.G.*, 794 S.W.2d 510, 511-12 (Tex. App.–Corpus Christi 1990, no writ) (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)).

In our previous opinion, we considered that the record before us showed that: (1) the trial court sent notice of the hearing by facsimile to an attorney who appeared at the hearing on behalf of Doña Raquel's Mexican counsel; (2) Doña Raquel's attorney ad litem, who had met with her prior to the hearing, appeared at the hearing on her behalf; (3) Doña Raquel was present for some, if not all, of the proceedings attendant to the hearing; (4) Doña Raquel was personally served with the application for

11

guardianship shortly after the hearing began; and (5) the trial court's first order appointing Raquel as temporary guardian was not entered until after Doña Raquel was personally served with the application. *In re Cantu*, 2009 Tex. App. LEXIS 2241, at *8-10. We thus concluded that the trial court had acquired jurisdiction over Doña Raquel at the time it signed the order appointing Raquel as her temporary guardian, and that the orders entered in the guardianship proceeding were not void. *Id.* at *10 (citing *In re B.A.G.*, 794 S.W.2d at 511-12; *Ortiz v. Gutierrez*, 792 S.W.2d 118, 119 (Tex. App.–San Antonio 1989, writ denied) (holding that the personal service requirement under the former guardianship statute was jurisdictional, and therefore, the trial court properly dismissed a guardianship proceeding when the proposed ward had not been personally served)).

Under the "law of the case" doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). By narrowing the issues in successive stages of the litigation, the doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Appellants' first issue in this appeal, in which they contend that the arbitration award should be vacated because it is the product of a series of trial court orders that are void and thus the arbitrator exceeded his powers or the award was obtained by undue means, has already been addressed by this Court. *See In re Cantu*, 2009 Tex. App. LEXIS 2241, at *8-10. We have been presented with no new or additional facts,

12

legal analysis, or argument that would change the disposition of this issue. Accordingly, the law of the case doctrine precludes us from reconsidering these issues. *See Briscoe*, 102 S.W.3d at 716. We overrule appellants' first issue.[4]

### V. ARBITRATOR'S AUTHORITY TO ENFORCE CONTRACTS PROHIBITED BY LAW OR ISSUE AN AWARD THAT VIOLATES PUBLIC POLICY

In their second issue, appellants argue that, although an arbitrator's powers are defined by contract, an arbitrator has no authority to enforce contractual provisions that are prohibited by law or to issue an award that violates public policy. In two sub-issues, appellants contend that: (1) the award should be vacated because the arbitrator exceeded his authority by enforcing contractual provisions that are prohibited by law; and (2) the award should be vacated because the arbitrator exceeded his authority by issuing an award that violates public policy. Specifically, appellants contend that the settlement agreement required the parties to divide assets that they did not own and which instead belonged to their mother or a separate company, San Pedro Impulsora De Inmuebles Especiales S.A. de C.V. ("San Pedro Impulsora"). Appellants also contend that the arbitration award violates public policy because it requires the parties not to act in the best interests of their mother insofar as it prevents their mother's return to Mexico until conditions precedent are met. In contrast, appellees claim that appellants waived their illegality and public policy objections to the arbitration award by

---

[4] We further note that section 171.090 of the Texas Arbitration Act specifically provides that "[t]he fact that the relief granted by the arbitrators could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.090 (Vernon 2005).

not raising them during the arbitration hearing and by failing to furnish a record of the arbitration proceeding.

As an initial matter, we note that appellants' second issue is phrased in terms of both statutory grounds for vacatur, insofar as they contend that the arbitrator exceeded his powers, and common law grounds, insofar as they invoke illegality and public policy grounds for vacating the award. In 2008, the United States Supreme Court held that the Federal Arbitration Act's statutory grounds for vacating an arbitration award are the exclusive means to vacate an award, thus foreclosing any contractual ground for vacatur of an arbitration award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). In rendering this decision, the supreme court "placed in doubt the continued validity of common law grounds for vacatur . . . previously recognized by Texas state and federal courts." *Townes Telecomms., Inc. v. Travis, Wolff & Co.*, 291 S.W.3d 490, 493 (Tex. App.–Dallas 2009, pet. denied) (finding it unnecessary to address common law grounds for vacatur because appellants had shown a statutory ground for vacatur of an arbitration award).

In decisions rendered prior to *Hall*, the Texas Supreme Court assumed, without deciding, that common law grounds for vacating an award had not been preempted by statute. *See CVN Group*, 95 S.W.3d at 238 (discussing illegality and public policy grounds for vacatur and noting that the parties had not addressed whether common law grounds for vacatur had been preempted by statutes governing arbitration); *Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002) ("Similarly, assuming without deciding that [appellee] may rely on the gross mistake standard under

the common law to attack the arbitrator's award, an arbitrator does not violate the common law simply by failing to award damages."). Following *Hall*, several intermediate appellate courts have limited review of an arbitration award under the Federal Arbitration Act to statutory grounds. *See, e.g., Allstyle Coil Co., v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.–Houston [1st Dist.] May 7, 2009, no pet.); *Ancor Holdings, LLC v. Peterson, Goldman, & Villani, Inc.*, 294 S.W.3d 818, 828 (Tex. App.–Dallas 2009, no pet.); *Fogal*, 294 S.W.3d at 720; *see also Petroleum Analyzer Co. LP v. Olstowski*, No. 01-09-00076-CV, 2010 Tex. App. LEXIS 5581, at *32-33 (Tex. App.–Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.); *Lefoumba v. Legend Classic Homes, Ltd.*, No. 14-08-00243-CV, 2009 Tex. App. LEXIS 7573, at *5-6 (Tex. App.–Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.); *Chandler v. Ford Motor Credit Co.*, No. 04-08-00100-CV, 2009 Tex. App. LEXIS 1587, at *8-10 (Tex. App.–San Antonio Mar. 4, 2009, no pet.) (mem. op.). Some courts, relying on the parallel structures of the Federal Arbitration Act and the Texas Arbitration Act, have likewise held that the Texas Arbitration Act's statutory provisions for vacating an arbitration award are exclusive, thus foreclosing the application of common law grounds for vacatur. *See Age Indus. v. Edwards*, 318 S.W.3d 461, 463 (Tex. App.–El Paso 2010, pet. dism'd); *Quinn*, 257 S.W.3d at 799.[5] In contrast, some Texas courts continue to apply statutory and common law grounds for vacating an award. *See, e.g., Graham-Rutledge & Co. v. Nadia Corp.*, 281 S.W.3d 683, 688 (Tex. App.–Dallas 2009,

---

[5] The common law and the Texas General Arbitration Act coexist as a dual system of arbitration, and the TAA is "cumulative" of the common law. *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351 (Tex. 1977); *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 415 (Tex. App.–Fort Worth 2009, no pet.).

no pet.) (reviewing statutory grounds for vacating an award and stating that Texas common law also provides that a binding arbitration award may be set aside if it is tainted with "fraud, misconduct, or such gross mistake as would imply bad faith, or a failure to exercise honest judgment").

The parties to this appeal have not addressed the continued viability of common law grounds for vacatur of an arbitration award under the Texas Arbitration Act, and appellants' issues are ostensibly couched in statutory terms for vacatur. Moreover, the applicability, or lack thereof, of the common law doctrines for vacatur is not determinative of this appeal. *See generally* Tex. R. App. P. 47.1, 47.4. Thus, we address appellants' second issue, that is, whether the arbitrator exceeded his authority, without deciding whether the common law doctrines referenced therein remain applicable.

The authority of an arbitrator is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication. *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (Tex. 1959); *Allstyle Coil Co.*, 295 S.W.3d at 44 (stating scope of authority depends on the agreement). An arbitrator exceeds his powers when he decides matters not properly before him. *Ancor Holdings, LLC v. Peterson, Goldman, & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.–Dallas 2009, no pet.); *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.–San Antonio 2003, pet. denied). When determining whether an arbitrator has exceeded his power, any doubts concerning the scope of what is arbitrable should be resolved in favor of arbitration. *See Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408

16

(Tex. App.–Dallas 2007, no pet.).   It is only when the arbitrator departs from the agreement and, in effect, dispenses his own idea of justice that the award may be unenforceable.  *Centex/Vestal*, 314 S.W.3d at 684.

In the instant case the arbitrator's authority derives from the "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement."   This agreement was entered to settle "the various claims, controversies, and disputes" among the parties "relating directly or indirectly to the transfer and gifting of property of [Doña Raquel] and/or Ignacio Villarreal Villarreal, the care and support of [Doña Raquel], and all other claims, controversies, and disputes, civil and criminal, between the parties . . . ."  The agreement states that "[a]ll parties agree that the estate of [Doña Raquel] consists of the 34 million pesos . . . and whatever money that is in the temporary guardian of the estate's accounts in the United States."  The agreement defines the properties that "belong to the seven children of [Doña Raquel]" and directs that the properties "shall be placed into hotchpotch and distributed among and between the seven children of [Doña Raquel]."   The hotchpotch is expressly defined in the agreement to include "all shares" and "any and all assets" of San Pedro Impulsora.  The agreement further repeatedly references the guardianship for Doña Raquel and includes provisions for her care.  As previously discussed, this document provides that arbitrator shall arbitrate "any dispute regarding the interpretation and implementation of this Agreement" including "the manner in which the [h]otchpotch is to be distributed to the seven children of [Doña Raquel]."

17

Because of the breadth of the arbitration agreement, we conclude that the arbitrator was authorized to determine that the property rights at issue herein arose out of or were related to the agreement or involved a common question of law or fact. *See Centex/Vestal*, 314 S.W.3d at 685; *Hisaw & Assoc. Gen. Contractors, Inc.*, 115 S.W.3d at 16. In short, the agreement at issue gave the arbitrator, either expressly or by necessary implication, the authority to decide matters pertaining to Doña Raquel and San Pedro Impulsora.[6]

Appellants further contend that the award is illegal because the arbitrator had no authority to issue an award distributing assets owned by Doña Raquel and San Pedro Impulsora because appellees do not have any justiciable interest in, or the legal capacity to sue to recover, any asset in Doña Raquel's estate or any asset belonging to a third party such as San Pedro Impulsora.

As a threshold matter, when a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. *Chestnut Energy Partners*, 300 S.W.3d at 401; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568. When there is no transcript of the arbitration hearing, as here, the appellate court will presume the evidence was adequate to support the award. *Chestnut Energy Partners*, 300 S.W.3d at 401; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568. The application of this general rule

---

[6] In our evaluation of appellants' arguments regarding the scope of the arbitrator's authority, we are mindful of other courts' cautions against a party's "use of the authority argument as a ruse to induce the reviewing court to redetermine the facts—even just a tiny bit—or reach a legal conclusion on them as found or hoped for which differs from that of the arbitrators." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.–Dallas 2010, no pet.) (quoting *Island on Lake Travis, Ltd. v. Hayman Co. Gen. Contractors*, 834 S.W.2d 529, 533 (Tex. App.–Austin 1992, writ granted, judgm't vacated w.r.m.)).

18

merely limits rather than forecloses our consideration of whether the arbitrator exceeded his authority in this instance. *Centex/Vestal*, 314 S.W.3d at 685; *see, e.g., Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 706 (Tex. App.–Fort Worth 2006, pet. denied) (noting that there was no record of the arbitration proceeding but considering pleadings and agreement in concluding arbitrator did not exceed his authority). Therefore, we consider the parties' agreement and the matters submitted in arbitration to determine whether the arbitrator exceeded his power. In so doing, we presume any remaining evidence supports the award. *See Centex/Vestal*, 314 S.W.3d at 685.

Because we do not have a record of the proceedings by which to consider appellants' complaints and we presume that the evidence was adequate to support the arbitrator's award, *see Statewide Remodeling, Inc.*, 244 S.W.3d at 568, we have no evidence before us to show that the property divided by agreement was actually held by Doña Raquel and San Pedro Impulsora. We further note that the arbitrator stated in his award that there was "substantial evidence" presented in the exhibits and at the arbitration hearing that appellants control San Pedro Impulsora. Accordingly, we reject appellants' fundamental premise underlying this issue insofar as it depends on facts which are unsupported by the record before us.

Moreover, appellants' suggestion that the arbitrator lacked authority to divide their mother's estate is supported by citation to one case, *Pike v. Crosby*, 472 S.W.2d 588 (Tex. Civ. App.–Eastland 1971, no writ). They contend that this case stands for the

19

proposition that heirs have no justiciable interest in a decedent's assets or the legal capacity to sue to cancel the decedent's conveyance of her assets to a trustee.

In *Pike*, Ora Badger conveyed all of her property to George Pike through a trust conveyance, with the property to be held in trust for Badger's benefit during her lifetime, and with title to vest in Pike at Badger's death. *Id.* at 588. After her death, her three heirs at law and a principal devisee under her will brought suit to cancel the trust conveyance. *Id.* The trial court granted a temporary injunction against Pike restraining him from disposing of any of Badger's estate pending final trial on the merits. *Id.* at 588-89. The court determined that the devisee under Badger's will had no justiciable interest or capacity to either bring or maintain the suit for cancellation of the conveyance because Badger's will was unprobated and thus, the devisee could not demonstrate an interest in the property in question. *Id.* at 589-90. The court further ruled that the decedent's heirs at law lacked a justiciable interest in the property and did not have legal capacity to maintain the suit because they could not allege, as required by common law, that there was no administration of Badger's estate pending, no necessity for administration, and no will left by the decedent. *Id.* at 590-91. The court held that, absent a right to maintain the underlying action, appellees were not entitled to the temporary injunction. *Id.* at 591.

*Pike* does not control our analysis of the issue. This case concerns the estate of a ward under guardianship where the assets of the estate were identified and divided by agreement by the seven children of the ward. In this regard, we note that appellants do not argue that imposition of a guardianship for Doña Raquel was error. Moreover, to

20

the extent that appellants' contentions rely on the factual allegations that any property at issue in the agreement belonged to Doña Raquel or San Pedro Impulsora, as stated previously, we note that there is no evidence in the record supporting these allegations.

Appellants further argue that the arbitrator exceeded his authority in issuing an award that violates public policy because it requires appellants not to act in the best interest of their mother. Appellants point out that they lack the ability to determine their mothers' residence and state that, under the terms of the award, Doña Raquel cannot be returned to her home in Mexico until appellants comply with the terms of the award.

"[A]n arbitration award cannot be set aside on public policy grounds except in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy." *CVN Group*, 95 S.W.3d at 239. "[A]ny claimed violation of such public policy must be carefully scrutinized to protect the arbitration award from unwarranted judicial interference." *Id.* Although public policy considerations may underlie the parent-child relationship, particularly where the parent is under guardianship, we conclude that the arbitration award in this case did not in any way impugn that relationship. Appellants' contentions are generally belied by the terms of the agreement and award. The agreement contains specific and detailed provisions regarding the care, custody, and control of Doña Raquel and attempts to ensure that all of her children have access to her. Moreover, as stated, all parties signed the agreement. The award cannot be said to "clearly" violate "carefully articulated, fundamental policy." *See id.* Accordingly, we overrule appellants' second issue.

## VI. Conduct of Arbitration Hearing

In their third issue, appellants assert that the arbitration award must be vacated because the arbitrator refused to postpone the arbitration hearing after a showing of sufficient cause and, accordingly, conducted the hearing in a manner that substantially prejudiced appellants' rights. Stated otherwise, appellants contend that the award should be vacated because the arbitrator refused to postpone the arbitration hearing even though appellants could not appear. Specifically, appellants assert that they were unable to attend the arbitration hearing because the trial court's order granting a temporary injunction, and a related order enforcing the temporary injunction and issuing writs of attachment, were under appeal. "Because the writs of attachment had issued, [appellants] were under threat of arrest and could not enter the United States to participate in the arbitration hearing." Appellees, in contrast, assert that this excuse does not constitute "sufficient cause" to postpone the arbitration.

In correspondence to the arbitrator, appellants argued that "[i]mproperly obtained writs of attachment preclude any meaningful arbitration and arbitration should be continued until [the] interlocutory appeal is decided." Appellants further stated that:

> As you are aware, [the trial court] issued writs of attachment for my client as well as his brother Fernando and Consuelo for supposedly violating a temporary injunction, which was granted on June 9, 2008. Those writs were issued on June 27, 2008 in contravention of [Texas Rule of Appellate Procedure] 29.4 because the temporary injunction was on appeal when the judge issued those writs. As I stated in my prior letter of August 4, 2008 my client will not appear at a hearing only to be arrested when he shows up at your office. Furthermore, attempting to proceed with a hearing under these circumstances would subject any potential award to being vacated under the provisions of [section] 171.088 of the [Texas] Civil Practice and Remedies Code. Therefore we object to the hearing and request that it be postponed until such time as the validity of

22

the injunction and the writs of attachment are decided by the court of appeals or supreme court.

The arbitration proceeded as scheduled on August 18, 2008. Appellants did not appear at the arbitration; however, their attorneys appeared on their behalf. In the arbitration award, the arbitrator addressed appellants' objection to the arbitration as follows:

> **Objection No. 1:  Improperly obtained writs of attachment preclude any meaningful arbitration and arbitration should be continued until interlocutory appeal is decided**.
>
> The Court of Appeals and the Supreme Court have denied any temporary relief or stay to the [appellants].  The "ground rules" for the Arbitration permitted the [appellants] parties to testify [through] Affidavits.  The [appellants] did not avail themselves of the opportunity to present, [through] their Attorneys, proposals, comments, responses, other witnesses, Affidavits or Exhibits (other than Exhibit [Numbers] 1, 2 & 24).  Objection No. 1 is overruled.

As stated previously, under the civil practice and remedies code, "the court shall vacate an award if . . . the arbitrator . . . refused to postpone the hearing after a showing of sufficient cause for the postponement."  Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(B).  In determining what constitutes a "sufficient cause for postponement" under section 171.088(a)(3)(B), we may examine the grounds a court would find sufficient to support a motion for continuance in a trial court.  *Hoggett v. Zimmerman*, 63 S.W.3d 807, 811 (Tex. App.–Houston [14th Dist.] 2001, no pet.).

Texas Rule of Civil Procedure 251 provides that a motion for continuance cannot be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."  Tex. R. Civ. P. 251.  Appellants have alleged that the arbitration should have been continued because they were unable to be present.

23

However, a trial court is not required to grant a motion for continuance just because a party is unable to be present at trial. *Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.–Corpus Christi 2003, no pet.); *Briscoe v. Goodmark Corp.*, 130 S.W.3d 160, 169 (Tex. App.–El Paso 2003, no pet.); *Hawthorne v. Guenther*, 917 S.W.2d 924, 929 (Tex. App.–Houston [1st Dist.] 1996, writ denied); *Humphrey v. Ahlschlager*, 778 S.W.2d 480, 483 (Tex. App.–Dallas 1989, no writ); *Brown v. Brown*, 599 S.W.2d 135, 137 (Tex. Civ. App.–Corpus Christi 1980, no writ). When a continuance is sought because of the unavailability of a party, we examine Texas Rule of Civil Procedure 252. *Hawthorne*, 917 S.W.2d at 929. This rule states:

> If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

TEX. R. CIV. P. 252; *see Duerr v. Brown*, 262 S.W.3d 63, 78-79 (Tex. App.–Houston [14th Dist] 2008, no pet.) (stating that a movant for continuance based on the need for testimony must identify the witness and the evidence that the testimony is expected to demonstrate).

In requesting that the arbitrator continue the hearing, appellants did not argue that their presence and testimony at the arbitration was material, they made no offering of what testimony or evidence they planned to present, and they did not show that any

such evidence could not be procured by means other than their attendance at arbitration. Further, as stated by the arbitrator, appellants had the opportunity to present testimony at the arbitration by affidavits, but failed to avail themselves of that opportunity. Under the foregoing circumstances, we cannot conclude that the arbitrator abused his discretion in denying appellants' request to continue the arbitration. We overrule appellants' third issue.

## VII. CONCLUSION

Having overruled each of appellants' issues, we affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 18th
day of November, 2010.