

## NUMBER 13-11-00413-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

PAUL BLACK, ET AL.,                                           Appellants,

v.

TOBY SHOR AND SEASHORE
 INVESTMENTS MANAGEMENT TRUST,                Appellees.

### On appeal from the County Court at Law No. 3
### of Nueces County, Texas.

# OPINION

### Before Justices Garza, Benavides and Perkes
### Opinion by Justice Benavides

Appellants, Paul Black, PBF Investments, Ltd., BNP Holdings, Ltd., BNP Commercial Properties, Ltd., Pagenergy Company, LLC, TSE Equities I LLC, TSE Equities Company, Ltd., BNP Management LLC, and 500 Water Street Property LLC, appeal from the judgment of the trial court affirming an arbitration award rendered

against them and in favor of Seashore Investments Management Trust ("Seashore") through its trustee, Toby Shor (collectively "appellees"). We affirm.[1]

## I. BACKGROUND

Seashore was created in 2001 for the purpose of investing in various oil and gas and commercial property companies owned and managed by Paul Black. Kenton McDonald was the original trustee for Seashore. Seashore and Black entered into several agreements pertaining to the terms of the investment, including an Agreement Regarding Termination of Joint Ownership, a Restructure Agreement, and an Indemnity Agreement. Through the trust, Shor, the grantor for Seashore, made substantial investments in the Black group of companies. In 2007, Shor succeeded McDonald as trustee of Seashore and began investigating the financial relationships of the companies.

After concluding that appellants had committed misfeasance with regard to Seashore's investments, Shor brought suit against appellants for injunctive relief and pre-arbitration discovery in Nueces County Court at Law Number One. Shor alleged that the agreements between the parties provided for arbitration and that the assets and records of the jointly owned companies had to be preserved to protect the right to a meaningful arbitration. The trial court appointed a special master to assist in the pre-arbitration process. In response to the allegations against them, appellants sought sanctions against Shor, sent Seashore a "termination notice" seeking to dissolve their relationship with it, and participated in a mediation led by the court-appointed special

---

[1] By separate opinion issued this same date, the Court vacated in part, and reversed and remanded in part, three post-judgment turnover orders issued on the judgment subject to appeal herein. *See Black v. Shor.*, Nos. 13-11-00570-CV & 13-11-00715-CV, 2013 Tex. App. LEXIS ___ (Tex. App.—Corpus Christi Apr. 18, 2013, no pet. h.).

2

master.  Subsequently, appellants filed a separate lawsuit against Seashore in County Court at Law Number Three for an alleged breach of the Agreement Regarding Termination.

Under the terms of the arbitration agreements between the parties, these matters were ultimately submitted to arbitration before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  After months of pre-arbitration discovery and motions practice, the arbitration hearing was held from June 2, 2010 to June 15, 2010.  In its detailed, ten-page award, the arbitration panel awarded Seashore "substantial relief" and denied the Black parties' claims "in their entirety."  Specifically, the panel concluded that Black "intentionally and over a lengthy period of years, extracted millions of dollars from the jointly-owned entities for his own personal use and benefit."  The panel awarded Seashore approximately $31,000,000 for its claims for breach of contract, breach of fiduciary duty, and fraud. The award states, in part:

> In 2001, Seashore invested in a group of companies run by Paul Black and PBF Investments, Limited ("PBF") consisting mainly of limited partnerships in the real estate and oil and gas businesses, with Paul Black directly or indirectly holding majority interests in and controlling the general partners, and Seashore holding minority and limited partnership interests. . . .  Paul Black, BNP Management, LC, Pagenergy Company, LLC and other Paul Black-owned or controlled entities stood in a fiduciary relationship to Seashore.
>
> The evidence presented at the Arbitration Hearing clearly and convincingly established that Paul Black treated the entities jointly-owned with Seashore as his own without regard for Seashore's rights and interests. In particular, the evidence established that Paul Black, intentionally and over a lengthy period of years, extracted millions of dollars from the jointly-owned entities for his own personal use and benefit.  Paul Black transferred substantial sums of money to companies wholly owned by himself.  He used company credit cards of the jointly-owned entities to pay personal expenses, and instructed company employees to transfer funds

3

from the business as necessary to prevent his personal checking account to be overdrawn. He made other improper transfers. He continued to make transfers for his own benefit even after some of his improper transfers and expenditures were discovered and he had signed a written agreement expressly prohibiting such transfers in the future. Mr. Black continued to make such transfers even when the entities lacked funds to pay their own creditors and obligations. As a fiduciary, Mr. Black had the burden to establish the fairness of all such transactions; based on the evidence presented at the Arbitration hearing, he failed to do so. Mr. Black's claims of implicit permission from Seashore and/or its trustee to engage in such self-dealings were contradicted by the evidence presented and belied by the written agreements between the Parties. The preponderance of the credible evidence established that Mr. Black, individually, and through PBF and the entities he controlled, violated fiduciary and other duties owed to Seashore and breached the agreements with Seashore. [Appellants], on the other hand, failed to establish entitlement to any of the relief they sought.

For these reasons, as discussed in greater detail below, we award [appellees] substantial relief on their claims asserted herein and deny [appellants'] claims in their entirety.

The award further details, inter alia, that appellants failed to make payments to appellees under promissory notes and guarantees; breached fiduciary duties to appellees "by wrongly taking and permitting or effecting excessive distributions from the jointly-owned entities [and] making improper transfers and misusing company funds;" "engaged in fraud and fraudulently induced Seashore to make an initial and subsequent investments in the jointly-owned entities" through promissory notes and other agreements; and "hid or attempted to hide transfers to benefit Mr. Black." The arbitration panel also concluded that the "type of misconduct proven in this case is precisely the sort of misbehavior Texas law seeks to deter by permitting awards of exemplary damages in appropriate cases" and awarded $5 million in punitive damages based on "a persisted pattern of willful, intentional, malicious conduct and grossly

4

negligent conduct on the part of Mr. Black toward Seashore over an extended period of time," for which the panel concluded that Mr. Black was "personally liable."

In County Court at Law Number One, Seashore moved to confirm the arbitration award, whereas appellants moved to vacate the award in County Court at Law Number Three. These cases were ultimately consolidated. The arbitration award was affirmed by judgment rendered by County Court at Law Number Three on April 6, 2011. This appeal ensued.

Appellants raise six issues on appeal: (1) the judgment and arbitration award should be vacated and set aside because the award is made to Seashore, which is not a legal entity, and the time for correcting the award has passed; (2) the judgment should be reversed because after modifying the award and the judgment, the trial court failed to issue findings of fact and conclusions of law to find a clerical error and that judge is no longer on the bench, precluding supplemental findings now; (3) the award on the "so-called" tort claims, which are related to the partnership interests, should be reversed and rendered because Seashore had transferred its partnership interest to the Toby Shor 2004 Grantor Retained Annuity Trust ("Toby Shor 2004 GRAT"), which was not a party to the arbitration; (4) the judgment and award should be set aside and remanded to a different arbitration panel because the panel failed to give effect to the termination of the partnership, and the allocation of liabilities and offsets in a termination requires a new arbitration proceeding; (5) the judgment and award should be reformed to eliminate duplicative tort and contract recovery, including amounts that were awarded for appellants' breach of the promissory notes underlying the transactions between appellants and appellees, or alternatively, reject any tort recovery outright for appellants'

5

failure to pay the promissory notes; and (6) the award of attorney's fees to Shor should be reversed and rendered because she was not a prevailing party and there is no other basis for awarding her fees.[2]

## II. STANDARD OF REVIEW

Arbitration is strongly favored by Texas law, and judicial review of an arbitration award is extraordinarily narrow. *See E. Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010) (citing *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)); *see also In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 17 (Tex. App.— Corpus Christi 2010, no pet.). "Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes." *CVN Group, Inc.*, 95 S.W.3d at 238. An

---

[2] Black filed a post-submission brief in this case on March 19, 2013, almost six weeks after oral argument in this cause. Appellees have filed a motion to strike the post-submission brief, or, in the alternative only, grant them leave to file a responsive brief. Black filed a response to the motion to strike his post-submission brief. Appellees contend that the post-submission brief should be struck because: Black did not seek leave of Court to file the brief; it is a "blatant attempt to re-argue the entire case;" it is untimely; it includes materials outside the appellate record; and it raises arguments and cites authorities that were not contained in appellants' original briefing. We may permit a party to amend or supplement a brief "whenever justice requires." TEX. R. APP. P. 38.7; *see also Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (appellate court has discretion whether to allow filing of amended or supplemental brief in interest of justice). However, new or additional issues raised in a reply brief or post-submission brief are untimely and will not be considered absent express permission from the appellate court allowing the new or additional issues. *See Garrett v. State*, 220 S.W.3d 926, 928–29 (Tex. Crim. App. 2007); *Collin Cnty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 877 (Tex. App.—Dallas 2012, pet. denied); *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 284 (Tex. App.—Fort Worth 2002, no pet.); *Haynes v. McIntosh*, 776 S.W.2d 784, 788 (Tex. App.—Corpus Christi 1989, writ denied). Moreover, we do not consider attachments to briefs that were not part of the trial court record and are not formally included in the appellate record. *Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001); *In re Guardianship of Winn,* 372 S.W.3d 291, 297 (Tex. App.—Dallas 2012, no pet.); *Paselk v. Rabun*, 293 S.W.3d 600, 612 n.12 (Tex. App.—Texarkana 2009, pet. denied); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). After due consideration of the foregoing law and the length of time that this appeal has been pending, we allow the filing of Black's post-submission brief, but limit our consideration of that brief to those issues previously raised in the original briefs and the documents properly presented in the appellate record. Thus, appellees' motion to strike is granted in part, and denied in part. The motion is GRANTED insofar as our consideration of the post-submission brief is circumscribed as described herein and DENIED as to all other relief sought.

6

arbitration award is given the same effect as a judgment of last resort and all reasonable presumptions are indulged in favor of the award and none against it. *Id.* Accordingly, we review a trial court's decision to vacate or confirm an arbitration award de novo, and we review the entire record. *Xtria L.L.C. v. Int'l Ins. Alliance Inc.*, 286 S.W.3d 583, 591 (Tex. App.—Texarkana 2009, pet. denied); *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d at 17; *see Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied). Although we review de novo a trial court's judgment confirming an arbitration award, we give "strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *Xtria L.L.C.*, 286 S.W.3d at 591; *see Centex/Vestal*, 314 S.W.3d at 683. Our review focuses on the integrity of the process, not the propriety of the result. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.); *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

While judicial review to determine whether an arbitrator correctly applied the law to the facts is generally limited under the Texas Arbitration Act, the parties, by their contract, may agree to allow for judicial review of an arbitration award for reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 (Tex. 2011). In this case, the parties' agreements do not contain any provisions allowing for an expanded judicial review of the arbitrator's decision, so our review is limited to determining whether the

matters the arbitrator decided were within the scope of the parties' agreements to arbitrate. *See id.*

### III. TEXAS ARBITRATION ACT OR FEDERAL ARBITRATION ACT

In the arbitration clauses that engendered these proceedings, the parties did not specify whether the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA") applies. *See* 9 U.S.C. §§ 1–16 (West 2009) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011) (TAA). Although similar, the two arbitration schemes are not identical with regard to the review of arbitration awards. *See Ewing v. Act Catastrophe-Tex. L.C.*, 375 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). *Compare* 9 U.S.C. §§ 10, 11, *and Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that grounds stated in the FAA for vacating or modifying an arbitration award are exclusive), *with* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.088, 171.091, *and E. Tex. Salt Water Disposal Co., Inc.*, 307 S.W.3d at 282 n. 7 (noting that court of appeals held that the arbitration award could be set aside under common law for fraud, misconduct, or gross mistake, but "express[ing] no opinion on this issue"), *and Callahan & Assocs. v. Orangefield Indep. Sch. Dist.*, 92 S.W.3d 841, 844 (Tex. 2002) ("assuming without deciding" that a party could attack an arbitration award on the common law ground of gross mistake, but concluding that the failure to award any damages did not constitute gross mistake).

On appeal, because the parties have not taken a position on this issue, but have instead variously referred to different sections of the TAA, we will apply the TAA to this case. Under the Texas arbitration scheme, section 171.088(a) of the Texas Civil

8

Practice and Remedies Code provides the following statutory grounds for which a trial court "shall" vacate an arbitration award:

(1)     the award was obtained by corruption, fraud, or other undue means;

(2)     the rights of the party were prejudiced by:

    (A)     evident partiality by an arbitrator appointed as a neutral arbitrator;

    (B)     corruption in an arbitrator; or

    (C)     misconduct or willful misbehavior of an arbitrator;

(3)     the arbitrator:

    (A)     exceeded his powers;

    (B)     refused to postpone the hearing after a showing of sufficient cause for the postponement;

    (C)     refused to hear evidence material to the controversy;

    (D)     conducted the hearing, contrary to sections 171.044–.047 of the civil practice and remedies code, in a manner that substantially prejudiced the rights of a party; or

(4)     there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under [statutes to compel arbitrations], and the party did not participate in the arbitration hearing without raising the objection.

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a) (West 2011).

### IV. PRESERVATION OF ERROR

We first address appellees' contention that "none of the issues on appeal were adequately preserved." According to appellees, appellants failed to timely file a motion to vacate the arbitration award on any of the grounds raised in this appeal. Appellees contend section 171.088(b) of the Texas Civil Practice and Remedies Code required

9

appellants to file a motion to vacate within 90 days of receiving the award. *See id.* § 171.088(b) (West 2011). Given that appellants received notice of the award on August 18, 2010, appellants timely filed such a motion on November 16, 2010; however, that motion identified only one ground for vacating the award: that the panel exceeded its authority by deciding an issue regarding a subordination agreement involving entities who were not parties to the arbitration agreements. Appellants did not raise other rationales for vacatur of the award until after 90 days had passed when, on November 24, 2010, they filed their motion for a take-nothing judgment, and on May 5, 2011, when they filed a motion for new trial. Appellees essentially contend that appellants were required to expressly raise all grounds for vacatur within the 90-day period allotted for filing a motion to vacate.

The TAA provides, "[o]n application of a party, the court shall vacate an award" where certain specified conditions are met. *Id.* § 171.088(a)(1). The party must make its application under subsection (a)(1) "not later than the 90th day after the date the grounds for the application are known or should have been known." *Id.* § 171.088(b). The plain language of section 171.088 shows that "the legislature intended the 90-day period . . . to be a limitations period after which a party cannot ask a court to vacate an arbitration award." *New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 428 (Tex. App.—Houston [1st Dist.] 2010, no pet.). However, while the statute provides a clear limitations period within which to file the motion to vacate, the statute does not concomitantly require the motion to vacate to include all grounds that will be raised for vacatur. In this regard, we note that the TAA contains no specific form requirements for the application to vacate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088; *Sydow v.*

10

*Verner, Liipfert, Bernhard, McPherson & Hand*, 218 S.W.3d 162, 172 (Tex. App.—Houston [14th Dist.] 2007, no pet.). There appear to be no policy or efficiency reasons to require a separate, formal application, so long as the party informs the court and the opposing party of the desire to have the award vacated. *Sydow*, 218 S.W.3d at 172.

It is abundantly clear that a party seeking to vacate an arbitration award must present any grounds for doing so to the trial court, otherwise, those complaints are waived on appeal. *See* TEX. R. APP. P. 33.1; *Ewing*, 375 S.W.3d at 549; *Kline v. O'Quinn*, 874 S.W.2d 776, 790–91 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (op. on reh'g). It is also clear that filing a motion to vacate after confirmation of the award constitutes waiver. *See, e.g., GJR Mgmt. Holdings, L.P.*, 126 S.W.3d at 260; *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 269 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). However, appellees cite no authority for the proposition that the trial court may not consider grounds for vacatur that are raised following a timely filed motion to vacate and before judgment. We conclude that appellants did not fail to preserve the issues in this appeal by failing to raise them within the ninety-day period for filing a motion to vacate. *See Sydow*, 218 S.W.3d at 171. Accordingly, we proceed to address the merits of the appeal.

## V. PARTIES

By their first and third issues, appellants attack the arbitration award on grounds that it was rendered in favor of entities or parties who were not properly before the arbitration panel. Appellants' first issue contends that the judgment and arbitration award should be vacated and set aside because the award is made to Seashore, which is not a legal entity, and the time for correcting the award has passed. The third issue

11

asserts that the award on the "so-called" tort claims, which are related to the partnership interests, should be reversed and rendered because Seashore had transferred its partnership interest to the Toby Shor 2004 GRAT, which was not a party to the arbitration. Appellants' arguments under these issues focus on jurisdiction and standing.

Although appellants do not expressly complain that the arbitrators "exceeded their powers" in determining that Seashore or the Toby Shor 2004 GRAT had justiciable interests, the underlying basis for their argument that the trial court had no jurisdiction over these entities is the contention that the arbitration panel exceeded its powers. Accordingly, we interpret appellants' real complaint to be that the arbitration panel exceeded its powers in determining that it had jurisdiction over these parties or that they had standing to pursue claims against appellants.

The Texas Supreme Court has stated that "the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959). Therefore, we turn our attention to the arbitration agreements at issue.

The "Agreement Regarding Termination of Joint Ownership" ("Agreement") refers to the parties thereto as including, inter alia, "Seashore Investment Management Trust, Kenton E. McDonald, trustee ('Seashore')," and states that "the undersigned" agree to set forth agreements for the provisions for the termination of their joint ownership of the businesses. The Agreement defines "the undersigned" as, inter alia, "Seashore, Toby Shor[,] and entities controlled by Seashore or Toby Shor [which] are sometimes

12

collectively referred to as the 'Seashore Group.'" The Agreement includes a dispute resolution provision as follows:

> Dispute Resolution. If a dispute ("Dispute") arises between the parties hereto regarding the meaning of this Agreement, or an alleged breach thereof, the parties agree to resolve the Dispute through the mediation and arbitration procedures described below in lieu of litigation.
>
> . . . .
>
> Arbitration. If the parties are not successful in resolving the dispute through [alternative dispute resolution], then the parties agree that the Dispute shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The costs of the arbitration shall be allocated as determined by the arbitrator.

A separate agreement between the parties, the "Restructure Agreement," defines the parties as including "Kenton E. McDonald, Trustee of Seashore Investment Management Trust ('Seashore')." This Restructure Agreement also provides a dispute resolution procedure including an arbitration provision that is substantially identical to the one in the Agreement.

At arbitration, both sides to this dispute stipulated that all parties were properly before the arbitration panel and all claims would be definitively resolved by the arbitrators. The stipulation entered by the parties provides as follows:

> The parties to this arbitration hereby stipulate to the arbitrability of, and submit to arbitration, all claims raised in the pleadings to date of all parties listed in the caption above. All parties in such caption agree and stipulate that they and all other such parties are properly before the Arbitration Panel, and that the Panel has power, authority, and jurisdiction to issue an award binding as to all parties. They agree further that a reasoned award is sufficient, and that such award need not include formal findings of fact and conclusions of law.

13

The caption, or style, includes "Toby Shor and Seashore Investment Management Trust" who are identified as respondents, counter-claimants, and third-party claimants.

The arbitration award defines the parties in relevant part as follows:

The term "Respondents" is used herein to refer to Toby Shor, individually, and Seashore Investments Management Trust ("Seashore"). Seashore is a grantor trust created in September 2000. Initially, Ms. Shor was the grantor and beneficiary. Her then husband, Kenton McDonald, served as trustee. Following Ms. Shor's divorce from Mr. McDonald in 2007, Ms. Shor became the trustee also.

In the instant case, appellants' arguments under their first issue focus on the fact that the arbitration award issued by the arbitration panel expressly awarded damages to "Seashore Investments Management Trust"; however, the final judgment, which expressly incorporated the arbitration award verbatim and by attachment, awarded damages to "Seashore, through Toby Shor as Trustee." In their third issue, appellants contend that the arbitration panel lacked jurisdiction to award damages to Seashore on various partnership-related claims because Seashore had previously transferred its partnership interests to the Toby Shor 2004 GRAT.

The arbitration clauses in the Agreement and Restructure Agreement are broad and encompass disputes regarding the meaning of the agreements or any alleged breaches thereof. The party definitions in these agreements are also quite broad. Under a broad arbitration clause, "a dispute between the parties to the contract concerning the ownership of a claim arising from the contract is just as arbitrable as a dispute concerning the merits of the claim itself." *Island on Lake Travis, Ltd. v. Hayman Co. Gen. Contractors*, 834 S.W.2d 529, 532 (Tex. App.—Austin 1992, writ granted, judgm't vacated w.r.m.); *see Hisaw & Assocs. Gen. Contrs., Inc. v. Cornerstone Concrete Sys.*, 115 S.W.3d 16, 19–20 (Tex. App.—Fort Worth 2003, pet. denied) ("We

14

hold that the arbitration clause gave the arbitration panel the power to make the determination as to whether Cornerstone, as opposed to Chatham, was the properly named party, and that the trial court correctly confirmed the arbitration panel's award."). Accordingly, based on the stipulation between the parties and the foregoing law, we conclude that the arbitration panel correctly ascertained and determined the parties before it. Moreover, we note that the issue regarding whether Seashore had transferred interests to the Toby Shor 2004 GRAT was a matter expressly submitted to the arbitrators.

We overrule appellants' first and third issues.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In their second issue, appellants contend that the judgment should be reversed because, after modifying the award in the judgment, the trial court failed to issue findings of fact and conclusions of law to correct a clerical error, and that judge is no longer on the bench, precluding supplemental findings now. In this regard, appellants contend that the arbitration panel awarded damages to Seashore, whereas the trial court's judgment, which recited and incorporated the arbitration award, rendered judgment "for Seashore Investments Management Trust through its trustee Toby Shor ('Seashore')."

Pursuant to Rules 296 and 297 of the Texas Rules of Civil Procedure, a trial judge must, when properly requested, prepare findings of fact in cases tried in the district court or county court without a jury. *See* TEX. R. CIV. P. 296 (providing that "in any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law"); *Id.* R. 297 (specifying

15

the timetable for filing findings of fact and conclusions of law and the procedure for filing a notice of past due findings of fact and conclusions of law). Rule 296 gives "a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). In other cases, findings and conclusions are "proper, but a party is not entitled to them." *Id.*; *see GE Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 710–11 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The term "tried" for the purposes of rule 296 includes the disposition of a case rendered after an evidentiary hearing before the trial court upon conflicting evidence. *See R.H. v. Smith*, 339 S.W.3d 756, 761 (Tex. App.—Dallas 2011, no pet.); *Puri v. Mansukhani*, 973 S.W.2d 701, 708 (Tex. App.—Houston [14th Dist.] 1998, no pet.)

When a judgment is rendered as a matter of law, findings and conclusions have no purpose and should not be requested or considered on appeal. *IKB Indus. (Nigeria) Ltd.*, 938 S.W.2d at 443. Therefore, even when the trial court receives evidence, findings and conclusions are only appropriate if the trial court is called upon to determine questions of fact upon conflicting evidence. *Ford v. City of Lubbock*, 76 S.W.3d 795, 796–98 (Tex. App.—Amarillo 2002, no pet.); *Port Arthur Indep. Sch. Dist. v. Port Arthur Teachers Ass'n*, 990 S.W.2d 955, 958 (Tex. App.—Beaumont 1999, pet. denied); *see also K2M3, LLC v. Cocoon Data Holding Pty. Ltd.*, No. 13-11-00194-CV, 2012 Tex. App. LEXIS 5203, at **9–10 (Tex. App.—Corpus Christi June 28, 2012, pet. denied) (mem. op.).

Because Rules 296 and 297 do not impose any duty on the trial court to file findings and conclusions when there has been no trial—that is to say, when there has

been no determination of questions of fact based on conflicting evidence—there is no error in the trial court's failure to file findings and conclusions. *See Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *In re Estate of Davis*, 216 S.W.3d 537, 542 (Tex. App.—Texarkana 2007, pet. denied); *Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 579 n.5 (Tex. App.—Austin 2006, no pet.).

Based upon the foregoing, we conclude that the trial court did not err in failing to make findings and conclusions. In the instant case, the trial court proceedings regarding the arbitration award were heard in the same manner and on the same notice as a motion in a civil case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.093 (West 2011). Specifically, no evidence was adduced by the parties at the hearing on the motion to confirm the arbitration award. The trial court did not make determinations of fact based on conflicting evidence; rather, that function was subsumed in the arbitration process by the arbitrators. Accordingly, we overrule appellants' second issue. *See Waterman S.S. Corp.*, 355 S.W.3d at 428; *see also Wiggins v. S. Energy Homes of Tex., Inc.*, No. 05-06-00769-CV, 2007 Tex. App. LEXIS 7900, at **3–4 (Tex. App.—Dallas Oct. 4, 2007, no pet.) (mem. op.) (concluding that the trial court did not err in failing to issue findings and conclusions in proceedings regarding an arbitration award); *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 442 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (reviewing trial court's summary judgment affirming an arbitration award).

## VII. PUBLIC POLICY

17

By their fourth issue, appellants contend that the judgment and award should be set aside and remanded to a different arbitration panel because the panel failed to give effect to the termination of the partnership and the allocation of liabilities and offsets that would result from a partnership termination. In connection with this issue, appellants argue that as "matter of public policy in this state," appellants were absolutely entitled to terminate their partnership relationships, and that the judgment and award failed to give effect to the legal termination of the partnership and the allocation of liability and indemnity that would be triggered by such a termination. Appellants contend that "[s]imply put, people cannot be forced to remain partners. The arbitration decision fails to recognize this important public policy decision for Texas."

Public policy is not listed as a ground for vacatur under the TAA. For purposes of this opinion, we assume, without deciding, that a public policy concern is a valid ground to set aside an arbitration award. The Texas Supreme Court has previously held that an arbitration award cannot be set aside on public policy grounds except in an "extraordinary case" in which the award "clearly violates carefully articulated, fundamental policy." *CVN Group, Inc.*, 95 S.W.3d at 239. To support vacatur of an arbitration award, a public policy concern must be "well defined and dominant" and not derived "from general considerations of supposed public interests." *Id.* at 239–40 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 44 (1987)); *see Lee v. Daniels & Daniels*, 264 S.W.3d 273, 278 (Tex. App.—San Antonio 2008, pet. denied).

Appellants' arguments regarding their alleged right to terminate the partnerships were submitted to, and heard by, the arbitration panel. The panel concluded, inter alia:

18

Although [appellants] allege a breach of the Termination Agreement[,] they failed to prove by a preponderance of the credible evidence that any breach actually occurred. Rather, the evidence established that although there was an agreement by [appellees] with respect to termination, [appellees] raised legitimate questions about what should be terminated, when it should happen[,] and how it should be done. Even Mr. Black admitted there was no deadline to accomplish termination. Moreover, [appellants'] conduct before and after the notice of termination, and their refusal to provide necessary information, excused performance of that agreement by [appellees] and thwarted any ability to terminate.

In addition to the failure to prove breach, [appellants] failed to prove that the alleged breaches caused any actual, recoverable damages or actually precluded [appellants] from hedging.[3] The causal connection between the alleged breach and the damages claimed was so tenuous that it established no causal connection at all. In addition, the damages claimed were impermissibly speculative, requiring, among other things, an assumption that [appellants] would have successfully engaged in physical hedging in the gas market. Such assumptions were not proven by the evidence presented. Accordingly [appellants'] claims for breach of the Termination Agreement claims are denied and [appellants] shall take nothing on those claims.

[Appellants'] request for an order directing termination and division of property also is denied. The Bankruptcy Court proceeding and other events and activities have progressed to such a stage that a termination order would not be fair, fully-effective[,] or meaningful at this time. Moreover, most of the relief requested is not warranted under the Termination Agreement or otherwise. Accordingly, the request for an order directing termination and division of property is denied.

Although appellants cite case law for the proposition that there are no restrictions on a partner's ability to terminate a partnership, *see Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545–46 (Tex. 1998), appellants provide no authority for the proposition that such ability is a well-defined, fundamental public policy. *See CVN Group, Inc.*, 95 S.W.3d at 239. Appellants' arguments that they were entitled to termination of the partnership were disputed by appellees and the issue was submitted to the arbitrators.

---

[3] "Hedging" is a method used to protect one's investment or an investor against loss by making balancing or compensating contracts or transactions. See http://www.oxforddictionaries.com/hedge (last visited March 21, 2013).

Appellants contend that the arbitrators were wrong; but a mere error, if any, does not necessarily implicate a violation of public policy. *See id.* We overrule appellants' fourth issue.

## VIII. DAMAGES

By their fifth issue, appellants contend that the judgment and award should be reformed to eliminate duplicative tort and contract recovery. Appellants assert that the arbitrators' finding of fraud in connection with appellants' breach of the promissory notes constitutes a manifest disregard of the law. Appellants further contend that the arbitration award violates the one-satisfaction rule by awarding damages for both tort and contract breaches, thereby awarding a double recovery for the same injury, and that the tort and fraud recoveries are subsumed within the recovery on the notes.

Manifest disregard is a very narrow standard of review. *Xtria L.L.C.*, 286 S.W.3d at 594; *Home Owners Mgmt. Enters., Inc. v. Dean*, 230 S.W.3d 766, 768–69 (Tex. App.—Dallas 2007, no pet.). It is more than error or misunderstanding of the law. *Xtria L.L.C.*, 286 S.W.3d at 594. Instead, the error must be "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Id.* Under this standard, the arbitrator recognizes a clearly governing principle and ignores it. *Id.* In other words, the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law. *Id.*; *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 332 (Tex. App.—Fort Worth 2006, no pet.)). It is appellants' burden to demonstrate the arbitrator manifestly disregarded the

law.  *Xtria L.L.C.*, 286 S.W.3d at 594; *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Gross mistake is conceptually analogous to manifest disregard.  *See Int'l Bank of Commerce v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 48 (Tex. App.—Corpus Christi 1998, pet. denied).  A gross mistake is a mistake that implies bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious.  *Xtria L.L.C.*, 286 S.W.3d at 598; *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 898 (Tex. App.—Texarkana 2006), *aff'd*, 307 S.W.3d 267, 268 (Tex. 2010); *Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  A judgment rendered after honest consideration given to conflicting claims, no matter how erroneous, is not arbitrary and capricious.  *Xtria L.L.C.*, 286 S.W.3d at 598.

We note that the doctrines of manifest disregard and gross mistake do not extend to mere mistakes of fact or law.  Judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award."  *Centex/Vestal*, 314 S.W.3d at 683; *Xtria L.L.C.*, 286 S.W.3d at 591; *Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

It is clear from the record from the arbitration hearing and the panel's lengthy written decision that the arbitration panel gave serious consideration to the parties' contentions, evidence, and arguments.  Nothing in the record suggests the panel made its decision in bad faith or that it failed to exercise honest judgment.  The trial court

21

should not overturn an arbitration award rendered after honest consideration given to claims and defenses presented to it, no matter how erroneous. *See Xtria L.L.C*, 286 S.W.3d at 598; *Werline*, 209 S.W.3d at 898. Accordingly, we hold the trial court did not err in denying the motion to vacate on this ground. We overrule appellants' fifth issue.

## IX. ATTORNEY'S FEES

In their sixth issue, appellants contend that the award of attorney's fees to Shor should be reversed and rendered because she was not a prevailing party and there is no other basis for awarding her fees. According to appellants, Shor did not recover individually on any cause of action.

The parties agreed to arbitrate in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and those rules allow the recovery of attorneys' fees "if all parties have requested such an award." AAA Comm. R. 43(d). The record from the arbitration hearing indicates that the parties had requested attorneys' fees. Moreover, the TAA provides that arbitrators "shall award attorney's fees as additional sums required to be paid under the award only if the fees are provided for: (1) in the agreement to arbitrate; or (2) by law for a recovery in a civil action in the district court on a cause of action on which any part of the award is based." TEX. CIV. PRAC. & REM. CODE ANN. § 171.048(c). By statute, Texas allows recovery for attorney's fees in claims for breach of an oral or written contract. *See id.* § 38.001(8) (West 2008). Texas also allows the recovery of attorney's fees for statutory fraud. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009).

In this case, the arbitrator's award of fees is authorized by law. *See Centex/Vestal*, 314 S.W.3d at 687. Moreover, to the extent that appellants' arguments

22

under this issue focus on the allegation that Shor was not a proper party to the arbitration or to receive an award, we have already addressed these issues and need not address them further in connection with this issue. *See* TEX. R. APP. P. 47.1, 47.4. We overrule issue six.

## X. CONCLUSION

Having overruled each of appellants' issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
18th day of April, 2013.