

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00300-CV
_____

MCR OIL TOOLS, LLC, Appellant

V.

HALLIBURTON ENERGY SERVICES, INC., Appellee

---

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-293104-17

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Opinion by Chief Justice Sudderth

**OPINION**

After the parties' licensing agreement expired and their relationship soured, Appellee Halliburton Energy Services, Inc. alleged that Appellant MCR Oil Tools, LLC was interfering with its contracts, and an arbitration panel found in Halliburton's favor. MCR challenges the trial court's confirmation of the arbitration award, arguing that the arbitration panel exceeded its powers by issuing the award because Halliburton's claims were based on its affiliates' contracts so there was no arbitration agreement. When challenging the existence of an arbitration agreement and seeking vacatur under the Texas Arbitration Act (TAA), the party seeking vacatur must show that it did not participate in the arbitration hearing without first raising the objection. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4). MCR did not do so. Accordingly, we will affirm.

## I. Background

MCR licenses specialized oilfield tools, and for approximately 16 years, Halliburton had a licensing agreement with MCR for the use of such tools (the Licensing Agreement). The Licensing Agreement contained a broad arbitration provision that required "[a]ny dispute, controversy, or claim arising out of or relating to th[e] Agreement, or the breach, termination[,] or invalidity thereof" to be "settled by arbitration in accordance with the UNCITRAL Arbitration Rules" and governed by substantive Texas law.

## A. Licensing Agreement Lapse and Unused Tools

When the Licensing Agreement lapsed in 2017, Halliburton had unused MCR tools on hand that it had paid for but was no longer authorized to use. So, Halliburton—acting through its affiliates—contracted with other MCR licensees to use the oilfield tools (the affiliate contracts). MCR intervened and demanded that the tools be returned to it and that Halliburton pay a disposal fee, but Halliburton balked and, later, advised MCR that it would destroy the unused tools itself. MCR sought the intervention of a Dallas County court, Halliburton agreed not to destroy the tools, and the parties entered into a Rule 11 agreement that the tool-related dispute would be resolved in arbitration.[1]

## B. Alleged Interference and Litigation

Within days of the parties' Rule 11 agreement, MCR sent a memorandum to its licensees vaguely referencing its lawsuit against Halliburton and instructing the licensees not to work with the company. Then, in a related writing, MCR told a licensee that an injunction was in place. Because, according to Halliburton, those communications interfered with the affiliate contracts with MCR's licensees, Halliburton sued MCR in Tarrant County court for tortious interference. But after MCR responded with defenses related to the Licensing Agreement, Halliburton

---

[1]The parties later agreed that the cost of shipping the tools back to MCR would be resolved in the arbitration proceeding, and in the interim, they provided a procedure for Halliburton's return of the tools to MCR. The agreed return procedure fell through after one shipment, and the alleged breach of this agreement became another issue for the arbitration panel to resolve.

concluded that its tortious interference claims were subject to arbitration, so it nonsuited the claims and filed a notice of arbitration.[2]

## D. Standing Challenge and Arbitration Hearing

At arbitration, Halliburton sought to recover not only for MCR's alleged tortious interference with its contracts but also for declaratory relief related to the Licensing Agreement and the unused MCR tools. MCR, in turn, brought counterclaims for breaches of the Licensing Agreement, breaches of various Rule 11 agreements, fraudulent inducement, and tortious interference with contracts and business relations.

Just before the final arbitration hearing, in MCR's pre-hearing brief, it raised a new argument: that Halliburton lacked standing to bring its tortious interference claims because it was not a signatory to the affiliate contracts on which the claims were based—its affiliates were the signatories.[3] Halliburton responded that MCR's standing challenge had been waived by stipulation; that it was untimely under the UNCITRAL rules; and that, regardless, Halliburton's nonsignatory status was a matter

---

[2]Prior to nonsuiting, Halliburton moved the Tarrant County court to compel arbitration. MCR resisted, arguing that its counterclaims fit within the Licensing Agreement's carveout and that Halliburton had waived the right to compel arbitration. But later, the parties agreed to submit all claims and counterclaims (other than injunctive claims) to arbitration, and the Tarrant County court stayed its case.

[3]MCR claimed that it had mentioned the standing argument to Halliburton in its disclosures and in a pre-hearing conference call. But the arbitration panel found that MCR had not raised the argument until its pre-hearing brief and had not brought the issue to the panel's attention until the start of the final arbitration hearing.

4

of capacity rather than standing and had been cured by Halliburton's since having obtained assignments from its affiliates.[4]

Although the parties discussed Halliburton's standing at the outset of the arbitration hearing,[5] the arbitration panel carried the issue and ordered the parties to address it in post-hearing briefing, which MCR did by filing a plea to the jurisdiction. In its plea, MCR acknowledged that the Licensing Agreement's arbitration provision required adherence to the UNCITRAL rules and that those rules provided for waiver of untimely jurisdictional challenges. Nonetheless, MCR sought to demonstrate that it had not waived its standing challenge. It further noted that the Licensing Agreement's arbitration provision established the application of substantive Texas law, and under Texas law, standing cannot be waived.

The arbitration panel ultimately rejected MCR's standing challenge, explaining that the challenge was both untimely and contrary to the parties' stipulated facts.[6] It

---

[4]Halliburton did not obtain assignments from its affiliates until after MCR raised the standing argument in its pre-hearing brief.

[5]When the parties discussed the standing issue at the beginning of the arbitration hearing, their arguments focused on whether Halliburton's nonsignatory status was a matter of standing or capacity, whether the issue could be waived, and whether MCR had waived it by failing to raise it earlier in the proceeding.

[6]Specifically, the panel concluded that MCR's standing challenge was contrary to its stipulation that "[u]pon expiration of the License Agreement, Halliburton began subcontracting with MCR licensees."

5

found in Halliburton's favor on the tortious interference claims—the only claims at issue in this appeal—and it issued an award accordingly.

## E. Confirmation Proceeding

Even before Halliburton sought judicial confirmation of the award, MCR filed a plea to the jurisdiction with the Tarrant County court and, alternatively, moved to vacate the arbitration award under the TAA. MCR argued that Halliburton's last-minute assignments had not cured the standing issue, that this standing issue deprived the trial court of jurisdiction to confirm the award, that the same standing issue had deprived the arbitration panel of jurisdiction so it had exceeded its powers by issuing the award, and that the panel had further exceeded its powers by determining the rights of and awarding relief to non-party Halliburton affiliates. Buried within its final argument, MCR noted that the affiliates were not parties to the Licensing Agreement and that MCR had not entered into any contracts with the affiliates to arbitrate any claims with them.[7]

---

[7]When MCR expanded upon the arbitrability argument in its trial court reply, Halliburton protested that the issue had not been raised in MCR's initial motion to vacate. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(b) (requiring motion to vacate to be filed "not later than the 90th day after the date of delivery of a copy of the award to the [movant]"). *But see Black v. Shor*, 443 S.W.3d 154, 163–64 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) (noting that, "while the statute provides a clear limitations period within which to file the motion to vacate, [it] does not concomitantly require the motion to vacate to include all grounds that will be raised for vacatur" and holding that trial court could consider vacatur grounds added after limitations period). Because we resolve this appeal on other grounds, we assume without deciding that MCR's motion to vacate adequately preserved its arbitrability challenge as a ground for vacatur. *See* Tex. R. App. P. 47.1.

The trial court rejected MCR's challenges and granted Halliburton's motion to confirm the arbitration award under the TAA.

## II. Discussion

In MCR's sole appellate issue, it argues that there was "no arbitration agreement relating to Halliburton's claim[s] for tortious interference," so the "arbitrators exceed[ed] their powers as a matter of law," and this court should "vacate the arbitration award as to Halliburton's tortious interference claim[s]."

## A.    Standard of Review

Texas law favors arbitration. *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016); *Brady v. Brady*, Nos. 02-23-00163-CV, 02-23-00164-CV, 2024 WL 637266, at *6 (Tex. App.—Fort Worth Feb. 15, 2024, pet. filed) (mem. op.). Consequently, an arbitration award is given the same effect as a judgment of a court of last resort, all reasonable presumptions are indulged in favor of the award, and the trial court "shall" confirm the award "[u]nless grounds are offered for vacating, modifying, or correcting an [arbitration] award." Tex. Civ. Prac. & Rem. Code Ann. § 171.087; *Brady*, 2024 WL 637266, at *7; *see Hoskins*, 497 S.W.3d at 494–95 (noting that "[t]he statutory text could not be plainer" and that "*unless* a statutory vacatur ground is offered [to the trial court], the court *shall* confirm the award"). The party seeking to vacate the arbitration award bears the burden of proving grounds for doing so. *See 2016 Parkview Condos. Dev., LLC v. Button*, No. 02-23-00252-CV, 2024 WL 1318245, at *4 (Tex. App.—Fort Worth Mar. 28, 2024, no pet.) (mem. op.); *Acra v. Bonaudo*, No. 05-17-00451-CV, 2018

7

WL 3238133, at *2 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.); *Banc of Am. Inv. Servs., Inc. v. Lancaster*, No. 2-06-314-CV, 2007 WL 2460277, at *7 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.).

The available grounds for vacating an arbitration award are statutorily delineated in the TAA.[8] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.088, .091; *see Hoskins*, 497 S.W.3d at 494 (clarifying that "the TAA leaves no room for courts to expand on those grounds, which do not include an arbitrator's manifest disregard of the law"). Those grounds include (1) "the arbitrators . . . [having] exceeded their powers" and (2) the absence of an "agreement to arbitrate, [if] the issue was not adversely determined in a proceeding [to compel or stay arbitration] and [if] the party [seeking vacatur] did not participate in the arbitration hearing without raising the objection." Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A), (a)(4).

We review a trial court's decision to confirm an arbitration award de novo. *Brady*, 2024 WL 637266, at *7.

**B. Discussion**

MCR contends that the Licensing Agreement's arbitration provision did not extend to Halliburton's affiliates' tortious interference claims and that the absence of an arbitration agreement presented grounds for vacatur under the TAA. But to secure

---

[8]MCR's appellate briefing cites to both the TAA and the Federal Arbitration Act (FAA), but its motion to vacate sought relief under the TAA, and Halliburton's response and motion to confirm the award similarly sought confirmation under the TAA.

vacatur under Section 171.088 of the TAA based on the absence of an arbitration agreement, MCR was required to satisfy the arbitrability-specific vacatur requirements in Subsection (a)(4)—whether or not MCR situated its challenge within that provision. MCR made no such showing. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4).

### 1.  Subsection (a)(4)—the arbitrability-specific ground—governs.

The statutory grounds for vacatur listed in the TAA include a ground specific to situations in which no arbitration agreement exists. *Id.* Subsection (a)(4) authorizes vacatur if "there was no agreement to arbitrate," but only if two requirements are satisfied: (1) "the issue was not adversely determined in a proceeding [to compel or stay arbitration;] and [(2)] the party [seeking vacatur] did not participate in the arbitration hearing without raising the objection." *Id.* Although MCR sought vacatur by arguing that there was no agreement to arbitrate, it did not rely on Subsection (a)(4) when it moved to vacate in the trial court,[9] and on appeal, it only briefly notes Subsection (a)(4)'s existence. Instead, MCR's arbitrability challenge focused on a broader provision—Subsection (a)(3)(A)—which authorizes vacatur based on "the arbitrators . . . [having] exceeded their powers" generally. *Id.* § 171.088(a)(3)(A). Nonetheless, Subsection (a)(4) governs.

Granted, one way an arbitration panel may exceed its authority is by issuing an arbitration award in the absence of an underlying agreement to arbitrate. *See Nafta*

---

[9]MCR's first citation to Subsection (a)(4) came in its motion to modify the judgment or for a new trial.

*Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011) (recognizing that "[a]n arbitrator derives his power from the parties' agreement to submit to arbitration" (quoting *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009))). But if a party could avoid Subsection (a)(4)'s requirements by simply reframing its arbitrability challenge as the arbitration panel having "exceeded [its] powers" under Subsection (a)(3)(A), then the party could set aside the award without having first raised the arbitrability objection before the arbitration panel, rendering Subsection (a)(4) meaningless. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A), *with id.* § 171.088(a)(4); *see also Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 83–84 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (Frost, J., concurring) (similar, reasoning that, "[i]f a party could obtain vacatur of an arbitration award under [S]ection 171.088(a)(3)(A) based on an assertion that the arbitrator exceeded her powers by determining claims not covered by any arbitration agreement without proving [the two arbitrability-specific requirements], these two requirements imposed by the Legislature . . . would be rendered meaningless"). And we "must not interpret [a] statute in a manner that renders any part of [it] meaningless or superfluous." *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

This is why our sister court held that a motion to vacate due to the absence of an arbitration agreement is properly considered under the arbitrability-specific vacatur provision of Subsection (a)(4), not within the broader powers-related provision of Subsection (a)(3)(A). *Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 241 (Tex.

10

App.—Houston [14th Dist.] 2017, pet. denied) (op. on reh'g). In *Kreit*, the appellant sought vacatur by arguing that the arbitrator had "exceeded his powers" due to the absence of an arbitration agreement without mentioning the arbitrability-specific vacatur requirements in Subsection (a)(4). *Id.* at 241–42. But the Fourteenth Court of Appeals held that the challenge was "properly considered under [S]ection 171.088(a)(4) as opposed to [S]ection 171.088(a)(3)(A)." *Id.* at 242. The court explained—much as we have here—that "[t]o hold otherwise would evade the express statutory mechanism" provided in Subsection (a)(4)'s arbitration-specific vacatur provision, "undermin[ing Subsection (a)(4)'s] obvious purpose" and "render[ing it] . . . meaningless." *Id.* at 242–43; *see Penhollow Custom Homes, L.L.C. v. Hawkins*, No. 05-07-01101-CV, 2008 WL 3020812, at *2 (Tex. App.—Dallas Aug. 6, 2008, pet. denied) (mem. op.) (applying Subsection (a)(4) requirements when appellant framed arbitrability challenge as the arbitrator having exceeded his powers under Subsection (a)(3)(A) and holding that record contained "no indication of what specific objection was raised with the arbitrator").

We agree with *Kreit*. Under the plain language of the TAA, a party seeking vacatur based on the absence of an arbitration agreement must satisfy the arbitrability-specific vacatur requirements of Subsection (a)(4), even if the party presents its challenge as the arbitration panel having "exceeded [its] powers" under Subsection (a)(3)(A). Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A), (a)(4). Therefore, for MCR to establish its entitlement to vacatur under the TAA based on the alleged

11

absence of an arbitration agreement, it was required to show that it had satisfied the two arbitrability-specific conditions of Subsection (a)(4). *See id.* § 171.088(a)(4). And one of those conditions was that MCR "did not participate in the arbitration hearing without raising the objection." *Id.*

### 2. MCR did not make a timely objection.

To demonstrate a timely arbitrability objection for purposes of Subsection (a)(4), MCR was required to show that it "did not participate in the arbitration hearing without raising the objection."[10] *Id.* In its motion to vacate, MCR made no such showing. Yet, on appeal, it claims both that under the circumstances it could not have waived the objection and that it did in fact raise it before participating in the hearing.

First, it contends that "[i]t would [have] be[en] impossible for MCR to have waived its objection" because Halliburton did not acquire its affiliates' claims until "13 days before the arbitration hearing" and "because, at the time of the final arbitration hearing, Halliburton had not asserted in its live Statement of Claims that it had acquired the claims." But MCR's feigned ignorance is disingenuous. When MCR challenged standing—which it did prior to participating in the arbitration hearing—it

---

[10]In its reply brief, MCR attempts to reverse the burden of proof, arguing that Halliburton bore a "heavy burden to show that MCR [had] agreed that there was an arbitration agreement." But as the party seeking to vacate the arbitration award, MCR bore the burden of establishing statutory grounds for vacatur. *See Acra*, 2018 WL 3238133, at *2 ("A party seeking to vacate or modify an arbitration award bears the burden of proving the necessary grounds.").

did so because Halliburton was asserting tortious interference claims that (in MCR's eyes) belonged to Halliburton's affiliates. The timing of MCR's standing challenge thus demonstrated that, before the arbitration hearing began, it was amply aware that Halliburton's claims were based on the affiliate contracts.

And the arbitration panel found that MCR had been aware of the affiliates' role in the litigation even before that. Part of the reason that the panel rejected MCR's standing challenge as untimely was because it found that, "[f]rom the earliest stages of th[e] dispute in 2017, MCR ha[d] known about the role of the Halliburton affiliates."[11]

Indeed, MCR's awareness that Halliburton's claims were based on the affiliate contracts is made all the more apparent by the second half of its appellate argument: that it timely raised the arbitrability issue with the arbitration panel. But to support this position, MCR points to a single statement in which it mentioned to the arbitration panel on the first day of the arbitration hearing that "there [wa]s no arbitration agreement in existence where [MCR] agreed to arbitrate the claims of the[] affiliates." When read in context, though, this offhanded statement did not amount to an arbitrability objection. It was situated within MCR's standing argument at the time when MCR was insisting that "[t]his [wa]s [a matter of] standing" and "[wa]s a

---

[11]In the arbitration panel's standing-related findings and conclusions, it found that (1) based on the parties' stipulated facts, Halliburton's statement of claims fairly encompassed Halliburton's claims on behalf of its affiliates and (2) "[f]rom the earliest stages of th[e] dispute in 2017, MCR ha[d] known about the role of the Halliburton affiliates."

standing argument"—not a capacity argument or any other type of waivable argument.[12] MCR's passing reference to the lack of an arbitration agreement was not accompanied by any explanation, analysis, follow up, or request for a ruling. There is no indication in the record that MCR intended, in the context in which it was made, for its offhanded remark to amount to an objection, and even though it now claims that it so intended, the comment was insufficient to make the arbitration panel aware that MCR was raising an arbitrability complaint. *See* Tex. R. App. P. 33.1(a).

MCR cannot rely on its standing objection for preservation of the arbitrability issue either. A party's standing to bring a claim is not the same as an arbitration

---

[12]MCR's counsel argued, in relevant part:

[Halliburton's counsel] transmogrified my argument and called it "capacity." It is a standing argument. They don't own the claims. Capacity is a minor can't sue, a corporate officer can't sue for the name of the corporation, those types of things.

This is standing. It cannot be waived. That's Texas Supreme Court, US Supreme Court, every court in the land. It can be raised the first time. We can even raise it on appeal. For that matter, there is no arbitration agreement in existence where we agreed to arbitrate the claims of these affiliates.

And, again, once [Halliburton's counsel] files that pleading or asks for a trial amendment, that we are now going to allege claims that, by the express assignment, we never owned before today or last week, we're going to assert those claims[,] and if we have a plea to the jurisdiction or something to file, just[,] you know, it just simply hasn't happened yet. They don't have it pled. Subsequent assignment cannot retroactively confer standing. There's a Texas Court of Appeals case. There's another Austin case. The language is there in the PowerPoint for the [p]anel to read.

14

panel's authority to resolve the subject matter of the claim. If the tortious interference claims had not been arbitrable, then the arbitration panel lacked the authority to resolve them, but Halliburton could still have pursued them in state court. But if Halliburton lacked the standing to bring the claims at all, then Halliburton was precluded from pursuing them in either forum. The two issues, though both jurisdictional, are distinct.[13]

MCR thus failed to show that it had raised a timely arbitrability objection before participating in the arbitration hearing, and such a showing was required to satisfy Subsection (a)(4)'s statutory requirements for vacatur. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4); *see also Lee v. Daniels & Daniels*, 264 S.W.3d 273, 277 (Tex. App.—San Antonio 2008, pet. denied) (op. on reh'g) (holding appellant's objection regarding absence of arbitration agreement did not present grounds for vacatur under Subsection (a)(4) when objection was not raised prior to participation in arbitration hearing). The trial court properly declined to vacate the arbitration award on this basis.

---

[13]MCR's actions show that it understood this distinction. When it raised the standing issue with the trial court, it did so via a plea to the jurisdiction, arguing that neither the arbitration panel nor the trial court could hear the tortious interference claims. And when it filed its plea to the jurisdiction with the arbitration panel, it disputed Halliburton's standing to bring its listed claims, but it expressly acknowledged that the Licensing Agreement's arbitration provision governed the proceeding, and because that provision required the application of UNCITRAL rules and substantive Texas law, MCR sought to advance its argument based on those rules and law. Now, in contrast, MCR argues that the UNCITRAL rules cannot be used to resolve the arbitrability issue because "there [wa]s no agreement to arbitrate," so "there was no agreement to use the UNCITRAL [a]rbitration [r]ules."

We overrule MCR's sole issue.

## IV.  Conclusion

Having overruled MCR's sole challenge to the trial court's confirmation of the arbitration award, we affirm the judgment.  Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  June 13, 2024

16