ACCEPTED
13-15-00217-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/7/2015 2:32:02 PM
Dorian E. Ramirez
CLERK

No. 13-15-00217-CV

IN THE COURT OF APPEALS FOR THE
THIRTEENTH DISTRICT OF TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
10/7/2015 2:32:02 PM
DORIAN E. RAMIREZ
Clerk

---

**SHERI EDDLEMAN,**

                 **Appellant/Defendant,**

**v.**

**MATTHEW J. OCKER,**

                 **Appellee/Plaintiff.**

---

Appealed from 319th District Court
Nueces County, Texas
Cause No. 2013-DCV-4182-G
Hon. David Stith

---

# REPLY BRIEF OF APPELLANT
# SHERI EDDLEMAN

---

Robert E. McKnight, Jr.
Texas Bar No. 24051839
Lynn A. Knaupp
Texas Bar No. 11587900
Marek, Griffin & Knaupp
203 N. Liberty Street
Victoria, Texas 77901
Tel: (361) 573-5500
Fax: (361) 573-5040

**ORAL ARGUMENT REQUESTED**       *Attorneys for Sheri Eddleman*

# Table of Contents

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument in Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Breach of Contract Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          1.    Lack of Agreement is Not an Affirmative Defense. . . . . . . . . . 3

          2.    Judge Alcala's Decision is Not at Issue. . . . . . . . . . . . . . . . . . . 4

    B.    The Attorney's Fees/Costs Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.    Fees/Costs in the 24th District Court, then in the
              2014 Appeal to this Court, then in Arbitration. . . . . . . . . . . . 9

              a.    Ocker Did Not Prevail in the 2014 Appeal. . . . . . . . . 13

              b.    Ocker Did Not Prevail in the 319th District Court. . . . 16

    C.    The Motion to Abate or Transfer Venue. . . . . . . . . . . . . . . . . . . . . . 19

    D.    The Procedural Posture of This Appeal. . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion and Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# Table of Authorities

**Cases**

*Black v. Shor*, 443 S.W.3d 154 (Tex. App.-Corpus Christi 2013,
pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 15

*E. Texas Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267 (Tex. 2010). . . . . 23

*In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11 (Tex. App.-
Corpus Christi 2010, no pet). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*In the Interest of H.N.O. and M.H.O.*, No. 13-14-00125-CV, 2014 WL
3541803 (Tex. App.-Corpus Christi July 17, 2014, no pet.). . . . . . . . . . . . . . . . 12

*Schuster v. Wild*, No. 13-13-00474-CV, 2015 WL 251564 (Tex. App.-
Corpus Christi Jan. 15, 2015, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*SCI Texas Funeral Servs., Inc. v. Roussett*, No. 13-03-295-CV, 2005 WL
742654 (Tex. App.-Corpus Christi Mar. 31, 2005). . . . . . . . . . . . . . . . . . . . . 17, 19

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992). . . . . . . . . 4

*Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203 (Tex. 1996). . . . . . . . . . . . . . . . 4

*Werline v. E. Texas Salt Water Disposal Co.*, 209 S.W.3d 888 (Tex. App.-
Texarkana 2006), *aff'd*, 307 S.W.3d 267 (Tex. 2010). . . . . . . . . . . . . . . . . . . . 23

**Texas Rules of Appellate Procedure**

Tex. R. App. P. 38.6(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. R. App. P. 9.4(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tex. R. App. P. 9.4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Texas Rules of Civil Procedure**

TEX. R. CIV. P. 298. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>Argument in Reply</u>**[1]

Sheri Eddleman's principal brief explained in great detail how each issue the arbitrator decided was firmly rooted in the parties' agreement to arbitrate. The response brief of the appellee, Matthew J. Ocker, does not meaningfully confront the body of Texas law that controls this appeal. Instead, he dwells on collateral irrelevancies concerning the correctness of the decisions of the arbitrator, and even of Judge Alcala, whose rulings are not at issue in this case.

If correctness were at issue, Eddleman would still prevail. But the *only* issue is whether the arbitrator exceeded his authority, and he clearly did not. Ocker's decision to ignore the settled and controlling law on that issue means that he has failed to challenge what Eddleman's principal brief established: that the parties' broad agreement to arbitrate encompassed all of the disputes on which the arbitrator issued an award in favor of Eddleman, so he did not exceed his authority, and the district court reversibly erred in denying Eddleman's motion to confirm. This Court should correct that error.

---

[1] A party normally has 20 days to file a reply brief. TEX. R. APP. P. 38.6(c). In this case, after the Court set oral argument on October 15, it granted appellee's motion for an extraordinary extension of 90 days to file his response brief. It was due on September 28, which was then altered to September 29. This allowed the appellant only 16 days to file the reply, and in reality much less, because the appellant would naturally want her reply filed long enough before the oral argument that the panel would have adequate time to review it, as the Rules envision.

1

## A.      The Breach of Contract Issue

One of the issues in this appeal is whether the district court erred in finding that the arbitrator exceeded his authority by "creating an irreconcilable ambiguity" (CR 424 at ¶ D) when he found that Eddleman "failed to exchange the children ... as contemplated by the [Mediated Settlement Agreement with her ex-husband, Ocker]," but also that she was the prevailing party on this breach-of-contract issue. (*Id.*) This alleged ambiguity was the district court's reason for denying Eddleman's motion to confirm the award (and for granting Ocker's motion to vacate). Ocker's response brief fails to explain why, even if the arbitrator had rendered an ambiguous decision—and he did not—he exceeded his authority.

Nothing in Ocker's response brief changes the fact that when Judge Alcala ordered (at the hearing on June 25, 2013) the parties to return to the mediator, he held on the record that the parties' differences about the MSA meant that "[t]here is no agreement" (other than the agreements in ¶ 10, including to mediate/ arbitrate), and that "the orders ... in effect are the last orders of the Court."[2] And there is still no dispute that the MSA required Eddleman to exchange the children in Cameron, Texas (CR 87), but that "the last orders of the Court" preceding the MSA did not. There is also no dispute that Eddleman, after the hearing on June 25,

_____

[2] Both parties included excerpts from the transcript of the hearing, Eddleman at Appendix B of her brief, and Ocker at Appendix A of his brief.

2

2013, complied with "the last orders of the Court," not the MSA.

That she did not comply with the MSA after June 25 was one of Ocker's complaints in the arbitration,[3] but the arbitrator rejected that complaint and found in favor of Eddleman on the ground that she complied with Judge Alcala's rulings on June 25 that the MSA was not in effect (other than ¶ 10). There was nothing ambiguous —and nothing that exceeded the arbitrator's authority—in the arbitrator's finding that Eddleman prevailed on this issue even though she did not exchange the children as contemplated by the MSA, because Judge Alcala had ruled that she was not required to do so.

### 1. Lack of Agreement is Not an Affirmative Defense

Ocker's response brief contends that the arbitrator should not have considered Eddleman's argument that the MSA was not in effect when she did not exchange the children in Cameron. According to Ocker, that was an affirmative defense to his claim that Eddleman breached the MSA, and she failed to plead that defense in her answer. (Ocker Am. Br. at 10 & 458.)

On the contrary: MSAs are contracts (as Ocker himself points out: Ocker

---

[3] It was one of the issues he complained about in the lawsuit he filed in the 319th District Court (CR 7-8), so it became one of the issues that the parties agreed to arbitrate. (CR 246: "The arbitration is intended to resolve all currently pending issues in the 319th District Court ... as well as all the issues currently pending in the 13th Court of Appeals.")

Am. Br. at 20), of which an essential element is an agreement,[4] and in this case Judge Alcala found that "[t]here is no agreement" (other than the agreements in ¶ 10). When Ocker sued later in the 319th District Court for breach of the MSA with respect to the visitation issue, an agreement was an essential element of *his* claim. All Eddleman had to do was deny it, and she did so by way of a general denial. (CR 22 at ¶ 14.) An affirmative defense, on the other hand, "does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996). Eddleman's general denial of an agreement was not independent of Ocker's contention that there was an agreement: it was merely a denial of his contention, so it was not an affirmative defense that required specific pleading.

### 2. Judge Alcala's Decision is Not at Issue

Ocker also wastes ink questioning whether Judge Alcala, in June 2013, released the parties from compliance with the MSA on the ground that "[t]here is no agreement" (other than ¶ 10). Ocker's response brief describes this as "an alleged order" (Ocker Am. Br. at 10), "a phantom Order" (*id.* at 47), and "clearly

---

[4] *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("[t]he material terms of the contract must be agreed upon before a court can enforce the contract").

contrary" to the written order that eventually issued (*id.* at 10.) That is sheer nonsense: Judge Alcala was quite clear on the record of the hearing:

> THE COURT: Okay, so the orders are in effect are the last orders of the Court, correct?

> MS. KNAUPP [counsel for Eddleman]: Correct. That are what's in effect.

> MR. KELLY [counsel for Ocker]: Your Honor, the [MSA] contemplates the agreement of the parties is now in effect.

> THE COURT: No. There's no agreement, right? There is no agreement by your own words so —

> MR. KELLY: There are disputes, but there is an agreement.

> THE COURT: No. No. There is no agreement. If there are disputes, there's no agreement. We're not going to take it that far.

(Eddleman Br., App'x B, Reporter's Record, Motion Hearing of June 25, 2013, at 29-30.) There is nothing "phantom" about what Judge Alcala said on the record.

Therefore, Ocker compares what Judge Alcala said on the record with the content of the order he issued on July 10, 2013:[5] in Ocker's view, the fact that the order says nothing about the status of the MSA is dispositive. (Ocker's Am. Br. at 13-14 & 43-44.) In so arguing, Ocker loses sight of the motions that Judge Alcala

---

[5] This order, attached as Appendix C to Ocker's amended brief, is not part of the appellate record of the case, but Eddleman does not dispute that it is an accurate copy of Judge Alcala's order. Eddleman takes no position on whether this Court should take judicial notice of the order.

had before him: (1) Eddleman's motion to enforce the MSA as written, and (2) Ocker's motion to go back to mediating/arbitrating the content of the MSA.[6] Judge Alcala abated Eddleman's motion and granted Ocker's.[7] The combined effect of these rulings, as well as Judge Alcala's comments at the hearing on June 25, was to make clear to anyone paying attention to the case that the MSA was no longer in effect (other than ¶ 10). That was certainly the message that the arbitrator got: as he stated in the arbitral award, Judge Alcala "found that there was no current agreement between the parties." (CR 305 at ¶ 7.) *In drawing that conclusion, the arbitrator in no way exceeded his authority to decide whether Eddleman breached the MSA.*

So Ocker retreats to his third alternative position: if Judge Alcala did indeed rule that there was no enforceable MSA (other than ¶ 10), then he erred in doing so. (Ocker Am. Br. at 43: "[T]o the extent there is an Order purporting to excuse

---

[6] Also at issue were Eddleman's and Ocker's motions for fees and costs (*see* Ocker Am. Br. at Appendix C). Judge Alcala's denial of Eddleman's motion is not at issue in this appeal, and his abatement of Ocker's motion is only relevant to the *next* issue discussed in this reply.

[7] Ocker's Brief evidences some confusion on this point. It states that Judge Alcala "abated his ruling on the pending motions," which implies that Judge Alcala ruled, and then abated his rulings. Rather, the text of the order makes clear that Judge Alcala abated Eddleman's *motion* to enforce the MSA as written, and Ocker's *motion* for fees and costs, by declining to rule on them until after the mediation/arbitration. (Ocker Am. Br. at Appendix C.)

EDDLEMAN from her contractual obligations, it is a void order.") But that is irrelevant on two levels. At the first level, the ruling by Judge Alcala is not, quite obviously, under review in this Court. In fact, instead of appealing it in the normal way, Ocker attacked it collaterally and improperly (thus drawing Eddleman's motion to transfer venue) by filing suit in the 319th District Court. There, he alleged that Eddleman was "ignoring ... the [MSA]" by failing to exchange the children in Cameron. (CR 7-8.) The only way such a claim could succeed would be if Judge Stith disagreed with Judge Alcala that the MSA did not control.

At the second level of irrelevance, Eddleman readily acknowledges that the arbitrator relied on Judge Alcala's ruling that the MSA did not control when he rejected Ocker's claim that she breached the MSA. The arbitrator simply accepted the ruling as the law of the case. Whether to do so was correct as a matter of law is not an issue that this Court has any authority to decide because, as it has already recognized, "[j]udicial review of an arbitration award 'is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award.'" *Black v. Shor*, 443 S.W.3d 154, 169 (Tex. App.-Corpus Christi 2013, pet. denied).[8]

---

[8] Eddleman's brief cited many other authorities for the same proposition (Eddleman's Brief at 16-17), and in the interest of brevity does not repeat them all here.

Ocker's brief fails to address this principle of Texas law. Instead, he cites case law to support his argument that Judge Alcala had no jurisdiction to set aside any portion of the MSA. (Ocker's Am. Br. at 42.) But reviewing the *correctness* of the arbitrator's acceptance of Judge Alcala's action in the light of case law is precisely the sort of mistake-of-law review that *Black* forbids. And it is all-the-more contradictory for Ocker now to criticize the arbitrator for following Judge Alcala's action given that Ocker insisted to the arbitrator that the parties' arbitration agreement did not encompass any issues in the 24th District Court. (CR 268.) The arbitrator agreed, and stated in his amended award that

> he has no authority to comment on, critique, or in any way change any Order arising out of the 24th District Court of Victoria County, Texas. For purposes of this First Amended Arbitration Award, this Arbitrator will simply assume that all Orders issuing out of that Court are timely and valid.

(CR 305; *see also* CR 280 at ¶ 8.) Having gotten what he wanted from the arbitrator—no review of Judge Alcala's rulings—Ocker now complains that the arbitrator should not have followed the rulings. The Court should not tolerate this kind of argument.

*The sole issue properly before the Court is whether the arbitrator exceeded his authority in deciding that Eddleman did not breach the MSA when she did not exchange the children in Cameron.* That depends *not* on whether Judge Alcala

ruled correctly on the status of the MSA, or whether the arbitrator correctly followed Judge Alcala's ruling, but on something entirely different: whether according to "'the language in the arbitration agreement,'" *Schuster v. Wild*, No. 13-13-00474-CV, 2015 WL 251564, at\*3 (Tex. App.-Corpus Christi Jan. 15, 2015, pet. denied), the parties agreed to submit the breach issue to arbitration. Ocker nowhere engages that issue in his brief, which is hardly surprising: it is patent on the face of this record that what the parties agreed to arbitrate included, in broad and sweeping language, with no exceptions, *"all currently pending issues in the 319th District Court"* (CR 246; emphasis added), and those issues included Ocker's allegation that Eddleman was "ignoring ... the [MSA]" by failing to exchange the children in Cameron. (CR 7-8.) The parties gave the arbitrator authority to decide that issue, he decided it, and that is the end of this part of the story. The district court should not have denied Eddleman's motion to confirm the arbitrator's rejection of Ocker's claim of breach of contract.

## B. The Attorney's Fees/Costs Issue

### 1. Fees/Costs in the 24th District Court, then in the 2014 Appeal to this Court, then in Arbitration

At the hearing on June 25, 2013, and later in the written order issued on July 10, 2013, Judge Alcala declined to rule on Ocker's motion for fees and costs (*see supra* note 7). The motion (CR 98-100) was premised on ¶ 10 of the MSA:

9

10. If one or more disputes arise with regard to the interpretation and/or performance of this Agreement or any of its provisions (pre-decree), including drafting disputes, pre-decree enforcement matters, issues relating to omitted property or the necessity and form of closing documents, the parties agree to resolve the dispute by mediation with MICHAEL P. O'REILLY, the mediator, who facilitated this settlement. If mediation fails, the parties agree to enter into binding arbitration with MICHAEL P. O'REILLY as the arbitrator and his decision on such matters shall be binding on the parties, including any decision as to the allocation of the costs of the arbitrator in the arbitration. If litigation is brought to construe or enforce this Agreement, the prevailing party shall be entitled to recover attorney's fees, as well as court costs and expenses, including the cost of the mediation/arbitration.

(CR 90.) In Ocker's view, he filed "litigation ... to construe or enforce this Agreement" when (amidst of the parties' disputes about crafting a judicial decree that would supersede the MSA) he opposed Eddleman's motion to enforce the MSA as originally written, and filed his own successful motion to require mediation/arbitration of the disputes.

Ocker states repeatedly in his brief that after Judge Alcala ordered mediation/arbitration, Eddleman (or Eddleman's counsel) refused to comply. (*See, e.g.*, Ocker's Am. Br. at 3, 9 & 38.) Ocker never offers any evidentiary support from the record for these statements, only citations to the same unsupported allegations he made in earlier pleadings. The truth (which is also outside the record) is that when the parties' counsel conferred shortly after the June 25 hearing to set a date for the mediation/arbitration, Ocker's counsel stated that he

10

was completely unavailable until August 19. Counsel then discussed August 27, but Eddleman's counsel responded, after checking with Eddleman herself, that Eddleman was not available because that day was at the beginning of the school year for herself and other teachers in her school district. Ocker's counsel then sued Eddleman on August 26 in the 319th District Court, alleging that she was breaching the MSA by not exchanging the children in Cameron (and by attaching various unreasonable conditions to mediation/arbitration under ¶ 10 of the MSA). (CR 6-8.)

Again, evidence of these efforts to set a mediation date is not in the appellate record or germane to this appeal, so it is odd that Ocker has felt the need to make unsupported accusations from outside the record blaming Eddleman for not complying with Judge Alcala's July 10 order. The Court must disregard them.

Despite the parties' continuing inability to mediate/arbitrate with Michael O'Reilly pursuant to Judge Alcala's July 10 order, they worked with Judge Alcala *himself*. He was able to issue, with both parties' assistance, an order in November 2013 that, at long last, superseded the MSA. (CR 204-32.) He also addressed Ocker's motion for fees and costs, which he had declined to rule on in the July 10 order, by denying the motion without explanation. (CR 232.)

Ocker appealed the denial to this Court in 2014,[9] but the parties later agreed to arbitrate "the issues currently pending in the 13th Court of Appeals" (CR 246) (along with the MSA breach allegations pending in the 319th District Court), so this Court dismissed the appeal. Hence, the parties agreed to let the *arbitrator,* instead of this Court, decide *de novo* the legal question of whether ¶ 10 of the MSA entitled Ocker to an award of fees and costs. The arbitrator's amended arbitration award (CR 304-08) addressed the 2014 Appeal only to state that it should be dismissed[10]—he did not explicitly address the fees/costs issue, nor did he award Ocker any fees/costs for "prevailing" on the "litigation" he had filed in the 24th District Court, i.e., opposing Eddleman's motion to enforce the MSA as written, and filing his own motion to compel mediation/arbitration of the disputes that had arisen when he tried to inject new issues into the MSA. However, in response to a request for additional findings of fact and conclusions of law (CR 273 at ¶ 2), the arbitrator stated that he resolved nothing from the 2014 Appeal because "[a]t the time of the arbitration, ... there were no pending issues to be

---

[9] *In the Interest of H.N.O. and M.H.O.*, No. 13-14-00125-CV, 2014 WL 3541803 (Tex. App.-Corpus Christi July 17, 2014, no pet.) ("the 2014 Appeal").

[10] When the arbitrator rendered his original award on May 5, 2014 (CR 248-52), the 2014 Appeal was still pending. By the date of his amended award on August 15, 2014 (CR 304-08), this Court had already dismissed the appeal (*see supra* note 9), but the arbitrator did not rewrite this portion of the original award.

12

resolved." (CR 279 at ¶ 2.[11])

### a. Ocker Did Not Prevail in the 2014 Appeal

Judge Stith refused to confirm the arbitrator's denial of Ocker's fees/costs

for the "litigation" in the 24th District Court because, in his view, Eddleman's

agreement to arbitrate the appealed issue of fees/costs meant that "the relief sought

in the 13th Court of Appeals had been accomplished." (CR 423-24 at ¶ B.)

Ocker's response brief defends that view: "When EDDLEMAN, acting through

her attorney, contracted to arbitrate the issues pending in the 13th Court of

Appeals, the relief OCKER sought in this Appellate Court had been in part

achieved ...." (Ocker's Am. Br. at 19-20.)

That is entirely false. The relief Ocker sought in the 2014 Appeal was from

Judge Alcala's order denying his motion for fees and costs. His motion had not

asked Judge Alcala to refer the motion to mediation/arbitration,[12] so the relief he

sought in this Court could not include such a referral. Eddleman's agreement to

---

[11] Ocker filed this request under TEX. R. CIV. P. 298, which requires trial courts to supply, upon request, findings and conclusions in actions tried without a jury. The rule has no applicability to arbitration proceedings, and it is not clear why the arbitrator felt bound to reply, especially since the parties' agreement to arbitrate waived a record. (CR 247 at ¶ 3.)

[12] The motion said only: "Movant further requests that the Court award him his attorney's fees, court costs and expenses including the cost of mediation/ arbitration." (CR 100 at ¶ VI.)

arbitrate the fees and costs in no way handed Ocker a victory on which Judge Stith could conclude that Ocker had prevailed in this Court.

Regardless of whether he prevailed in the 2014 Appeal when Eddleman agreed to arbitrate its issue of fees and costs, Ocker's brief complains about the arbitrator's failure to address those fees and costs. (Ocker's Am. Br. at 16-17.) (As noted above, the arbitrator found that there were "no pending issues to be resolved" in the 2014 Appeal (CR 279 at ¶ 2.)) That finding is the result of Ocker's too-clever-by-half maneuvering. As Ocker explained to the arbitrator in response to the original arbitral award, the arbitration agreement "limited your jurisdiction to arbitrate issues concerning any litigation in the 13th Court of Appeals and the 319th Judicial District Court," and did not include authority over any issues in the 24th District Court. (CR 368.) Of course, the issue in the 13th Court of Appeals *was* the issue in the 24th District Court: whether ¶ 10 of the MSA entitled Ocker to an award of fees and costs. But Ocker had insisted, so the arbitrator's hands were tied, and he concluded in his amended award that

> he has no authority to comment on, critique, or in any way change any Order arising out of the 24th District Court of Victoria County, Texas. For purposes of this First Amended Arbitration Award, this Arbitrator will simply assume that all Orders issuing out of that Court are timely and valid.

(CR 305; *see also* CR 280 at ¶ 8.)

14

Thus, Ocker's insistence created the same problem as with the breach of contract issue (*see supra* page 8): he insisted to the arbitrator that he could not decide a certain issue, only to fault the arbitrator now for not deciding the issue. Whatever the Court may think of the arbitrator's decision that "there were no pending issues to be resolved" because Judge Alcala's ruling on fees and costs was presumed to be "valid" (CR 279 at ¶ 2), it must consider that decision in light of the dilemma Ocker created.

But what really dooms Ocker's position is *Black*, 443 S.W.3d at 169 ("[j]udicial review of an arbitration award 'is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award'") and similar cases (*see* Eddleman's Br. at 16-17) holding that the correctness of the arbitrator's decision is beyond the scope of this appeal. It is patent on the face of this record that the parties' agreement to arbitrate included "the issues currently pending in the 13th Court of Appeals" (CR 246), and those issues included Ocker's motion for fees and costs on the ground that he "prevail[ed]" in the "litigation" by getting the July 10 order from Judge Alcala compelling mediation and arbitration. The arbitrator decided that the presumed validity of Judge Alcala's decision—a point on which Ocker had insisted—meant that "there were no pending issues to be resolved," and that is the end of this part

of the story. The district court should not have denied Eddleman's motion to confirm the arbitrator's rejection of this claim for fees and costs.

### b. Ocker Did Not Prevail in the 319th District Court

The arbitrator also had before him Ocker's other claim for fees and costs, which arose from the litigation in 319th District Court. That claim was premised on the theory that he prevailed by getting Judge Stith to order mediation/ arbitration pursuant to ¶ 10 of the MSA, and that he prevailed against Eddleman on the claim that she breached the MSA by not exchanging the children in Cameron after June 25, 2013. (CR 6-7.)

The arbitrator found that Judge Alcala did not require compliance with the MSA after June 25, 2013, so naturally he did not award fees on that basis. As we have already seen, nothing in Ocker's response brief explains how the arbitrator exceeded his authority by following Judge Alcala; consequently, nothing in Ocker's response brief explains how the arbitrator exceeded his authority by not awarding fees/costs to Ocker on this issue. It follows that Judge Stith erred in denying confirmation on the ground that the failure to award fee/costs to Ocker on this issue somehow amounted to exceeding the arbitrator's authority.

The arbitrator did not address, and implicitly denied, Ocker's claim for fees and costs on the ground that he prevailed by getting Judge Stith's order

16

compelling mediation/arbitration. Judge Stith, in his later order denying confirmation, seems to have believed that getting such an order was sufficient,[13] (CR 424), and Ocker's response brief defends that view:

> The Arbitrator has chosen not to address ... Eddleman's failure to submit pre-decree disputes to mediation and arbitration. The uncontroverted record reflects that [she] did in fact fail to comply with this requirement until not one but two District Judges ordered her to comply. The record reflects a strong implication that if the Arbitrator had complied with his contractual obligation to consider this alleged breach of contract, OCKER would have been considered the prevailing party, and thus, entitled to his attorney's fees. We will not know for certain, however, until after the Arbitrator complies with Judge Stith's order vacating his arbitration ruling, directing him to re-arbitrate in conformity with the Judge's ruling.

(Ocker's Br. at 44-45.)

The argument is groundless. The parties agreed to arbitrate without a record (CR 247 at ¶ 3), so the court "*must* presume adequate reasoning and evidence to support the award" (emphasis added). *SCI Texas Funeral Servs., Inc. v. Roussett*, No. 13-03-295-CV, 2005 WL 742654, at *1 (Tex. App.-Corpus Christi Mar. 31, 2005, no pet.). *See also In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 24 (Tex. App.-Corpus Christi 2010, no pet) ("[w]hen there is no transcript of the arbitration hearing, as here, the appellate court will presume the evidence was

---

[13] "[T]his Court ... ordered [Eddleman] to mediate and arbitrate disputed issues regarding the [MSA] yet the Arbitrator did not rule on Movant [Ocker's] costs and damages as mandated by paragraph 10 of the [MSA]." (CR 424.)

17

adequate to support the award"). This is necessary because, without a record, it is simply impossible for a reviewing court to know what issues a partly actually raised during an arbitration. Hence, it is important to point out that Ocker, when he asked the arbitrator to amend the award on the ground that he exceeded his authority, *failed to mention that he believed the arbitrator had done so by not awarding fees and costs for prevailing in the 319th District Court*. (CR 371.) An arbitrator's decision on an issue beyond the scope of the agreement clearly exceeds the arbitrator's authority, but the lack of an explicit decision on an issue within the scope of the agreement means little, if anything.

Further, it was "adequate reasoning" for the arbitrator to construe ¶ 10 to mean that  fees and costs were awardable only for prevailing on a substantive dispute about the interpretation and/or performance of the MSA, not for obtaining just an order to mediate/arbitrate a substantive dispute. Otherwise, a party who prevailed only to the extent of requiring mediation/ arbitration would be entitled to fees even if that party lost the subsequent arbitration and post-arbitral litigation: an outcome that would make no sense.

Eddleman pointed out this interpretation of ¶ 10 in her original brief (Eddleman's Br. at 22-23), and *nothing* in Ocker's response brief engages the issue. Instead, Ocker's speculation about his chances of winning, in the above-

quoted passage from his brief, depends entirely upon his own interpretation of what it means to be a "prevailing party" under ¶ 10, without admitting the possibility of another and more reasonable interpretation. Ocker's argument contradicts *SCI Texas* and *Guardianship*, asking the Court to assume that the arbitrator's reasoning was not adequate for denying this claim for fees (if he pressed it before the arbitrator). Since the arbitrator's reasoning was adequate on an issue that Ocker contends was within the scope of the arbitration agreement, the arbitrator clearly did not exceed his authority.

## C.    The Motion to Abate or Transfer Venue

The final issue is whether the arbitrator exceeded his authority by ruling on Eddleman's motion, in the 319th District Court, to transfer the venue of Ocker's action to Victoria County. Judge Stith believed that the motion was moot, and so the arbitrator's ruling exceeded his authority. (CR 423 at ¶ A.) Ocker's response brief defends that view, arguing that "Judge Stith's order directing the parties back to mediation and arbitration was dispositive of the Motion to Transfer Venue." (Ocker's Am. Br. at 33.)

That assertion is far from accurate. As Eddleman pointed out in her original brief, after Judge Stith declined to rule on the venue motion, the arbitrator correctly saw that deciding it was part of his duty because, with the expectation

19

that Judge Stith would confirm his award, he foresaw that Judge Stith would then transfer the action to Victoria County for collection of the attorney's fees awarded to Eddleman. That is, in fact, precisely the explanation that the arbitrator stated in his response to Ocker's request for additional findings and conclusions:

6.  SHERI EDDLEMAN was entitled to have the proceedings in the 319th District Court abated because the case was brought in the wrong court in violation of the agreement of the parties contained in the [MSA] ....

7.  As stated above, the case was brought in the wrong county .... It should properly be in Victoria County. However, based upon the disposition and the Arbitration Award there is nothing to transfer to Victoria other th[a]n the entry of the Judgment for attorney's fees granted in the Arbitration Award.

(CR 279-80.) This is more than adequate reasoning to support the arbitrator's decision to rule on the motion to abate or transfer venue on the ground that it was not moot and was not in excess of his authority. Ocker's argument to the contrary entails disregarding the arbitrator's explanation.

Ocker also complains, in the same general section of his brief, that the arbitrator did not properly calculate the fees and costs that he awarded to Eddleman for prevailing on the motion to abate or transfer venue. (Ocker's Am. Br. at 35-36.) Judge Stith's order denying confirmation (and granting vacatur) did not in any way address the calculation of these fees and costs. This is consistent with the fact that Ocker, in his motion to vacate the arbitration award, did not

20

argue that these fees and costs had been calculated improperly; he only contended that they were entirely improper because the arbitrator "made no rulings or findings consistent with Texas law that Sherri Eddleman was the prevailing party in this litigation." (CR 244.)

But even if Ocker's failure to argue this particular error to the district court does not waive his right to do so now, his argument has no merit. The attorney's fee award represented only work that occurred in connection with the litigation in the 319th District Court,[14] where (as the arbitrator explained) Eddleman prevailed on two issues: (1) she defeated Ocker's claim that she violated the MSA by not exchanging the children in Cameron, and (2) she prevailed on the venue issue. (CR 279 at ¶ 4.) But winning on the motion to transfer venue, according to Ocker, did not qualify Eddleman for an award of fees under ¶ 10 because it was *not* a motion "to construe or enforce the [MSA]." (Ocker's Am. Br. at 36.) And because the arbitrator failed to segregate the fee award by the two issues, Ocker believes there is a risk of it improperly including amounts for litigating the venue issue: "[t]he Arbitrator does not distinguish in his award of attorney's fees, how much of the attorney's fees he awarded are attributable to this Motion to Transfer Venue, so the entire award should be set aside." (Ocker's Am. Br. at 35.)

---

[14] "[Eddleman's counsel's] letter to [the arbitrator] ... requested fees *only* in connection with the litigation in the 319th Judicial District." (CR 374 at ¶ 2.)

That is an absurd argument. The MSA provided that it was "made and performable in Victoria County" (CR 90 at ¶ 9), a provision clearly designed to create venue in Victoria County. Therefore, when Ocker sued Eddleman in Nueces County, alleging that she was violating the MSA, her motion to abate or transfer that action plainly and simply sought to enforce ¶ 9 of the MSA.

Ocker even goes so far as to say that his suit in Nueces County, alleging that Eddleman was violating the MSA, "was not a lawsuit brought to enforce or construe the [MSA], [but] it was a lawsuit seeking damages for a breach of the [MSA]." (Ocker's Am. Br. at 36.) Consequently, Ocker believes that once again Eddleman did not prevail on enforcement or construal of the MSA when she defeated the claim. But *how* Ocker could possibly have won damages for breach of the MSA without the 319th District Court construing or enforcing the MSA is a question that Ocker's brief does not even try to answer.

### D.      The Procedural Posture of This Appeal

Ocker states that if Eddleman wins her appeal of the denial of her motion to confirm the arbitration award, then her decision not to appeal the granting of *his* motion for vacatur "will create the unfortunate circumstance where there will be two separate outcomes from the same arbitration." (Ocker's Am. Br. at 6.) Clearly, Ocker has failed to appreciate—and nowhere addresses— Eddleman's discussion

22

of that very issue in her original brief:

> The granting of Ocker's motion to vacate is not presently appealable, but that does not preclude Eddleman from appealing the denial of confirmation, nor does it preclude this Court from ordering confirmation. *Werline v. E. Texas Salt Water Disposal Co.*, 209 S.W.3d 888 (Tex. App.-Texarkana 2006), presented exactly the same scenario: denial of confirmation, and grant of vacatur with an order to rearbitrate. The court of appeals held that denial of confirmation was appealable, and it "render[ed] judgment confirming the arbitrator's award." *Id.* at 901. The Texas Supreme Court affirmed. 307 S.W.3d 267 (Tex. 2010).

(Eddleman's Br. at 1 n.1.) The Texas Supreme Court in *Werline* saw no problem with an appellate judgment that confirmed an arbitration award, regardless of the non-appealability of the vacatur. The vacatur is necessarily incompatible with the confirmation, and cannot survive confirmation by the higher court. Ocker's concern about this issue has no merit.

## Conclusion and Prayer for Relief

The Court should reverse the denial of Eddleman's motion to confirm the arbitrator's amended award, and order confirmation of the award in its entirety. The Court should also instruct the district court that after it confirms the amended award in its entirety, it should transfer the action to the 24th District Court, Victoria County. Once there, Eddleman will be able to collect the fees and costs specified in the confirmed award, and will be able to move for the additional fees and costs that she has incurred, in the district court and in this Court, in obtaining confirmation.

23

Date: October 7, 2015

Respectfully submitted,

MAREK, GRIFFIN & KNAUPP
Post Office Box 2329
203 N. Liberty Street
Victoria, Texas  77902
(361) 573-5500 [telephone]
(361) 573-5040 [facsimile]

By:  */s/ Robert E. McKnight, Jr.*
ROBERT E. McKNIGHT, JR.
State Bar No. 24051839
Lynn A. Knaupp
Texas Bar No. 11587900

ATTORNEYS FOR
APPELLANT/DEFENDANT,
Sheri Eddleman

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that the number of words contained in this computer-generated brief, excluding the portions listed in Rule 9.4(i)(1), as counted by the word-processing program with which it was prepared (WordPerfect X6), is 5,872.

*/s/ Robert E. McKnight, Jr.*
ROBERT E. McKNIGHT, JR.

## Certificate of Service

I certify that the foregoing has been served on Matthew J. Ocker by electronic service through this counsel of record shown below, on this 7th day of October, 2015.

William J. Kelly
1402 N. Chaparral
Corpus Christi, TX   78401
judy@billkellyonline.com

*/s/ Robert E. McKnight, Jr.*
Robert E. McKnight, Jr.